# 23-7469-cv

## United States Court of Appeals
## for the Second Circuit

———————————

MAN ZHANG and CHUNMAN ZHANG, individually, and as Administrators of
The Estate of ZHIQUAN ZHANG, Deceased,

*Plaintiffs – Appellants,*

*v.*

THE CITY OF NEW YORK, THE NEW YORK CITY DEPARTMENT OF
CORRECTION, RIKERS ISLAND FACILITIES, NEW YORK CITY HEALTH
AND HOSPITALS CORPORATION, CORIZON HEALTH, INC., BILL DE
BLASIO, Individually, and as Mayor of the City of New York, JOSEPH PONTE,
Individually, and as then Commissioner of the New York City Department of
Correction, RAM RAJU, Individually, and as then President of New York City
Health and Hospitals Corporation, PATSY YANG, Individually, and as New York
City Health and Hospitals Corporation's Senior Vice President for Correctional
Health Services, KAREY WITTY, Individually, and as Chief Executive Officer of
Corizon Health, Inc., NEW YORK CITY CORRECTION OFFICERS, "JOHN and
JANE DOES 1-10", in their Individual and Official Capacities, NEW YORK
CITY HEALTH AND HOSPITALS CORPORATION EMPLOYEES AND
AGENTS, "JOHN and JANE DOES 11-20", in their Individual and Official
Capacities, CORIZON HEALTH, INC. EMPLOYEES AND AGENTS, "JOHN
and JANE DOES 21-30", in their Individual and Official Capacities,

*Defendants – Appellees.*

———————————

**[CAPTION CONTINUES ON THE NEXT PAGE]**

*On Appeal from the United States District Court for the Southern District of New York*

# BRIEF FOR PLAINTIFFS – APPELLANTS

David Yan, Esq.
Law Offices of David Yan, P.C.
136-20 38th Avenue, Suite 11E
Flushing, NY 11354
Tel.: (718) 888-7788

*Counsel for Plaintiffs - Appellants*
MAN ZHANG and CHUNMAN ZHANG, individually,
and as Administrators of The Estate of ZHIQUAN ZHANG, Deceased.

## <u>TABLE OF CONTENTS</u>

PAGE

PRELIMINARY STATEMENT ...................................................1

JURISDICTIONAL STATEMENT ...........................................4

STATEMENT OF ISSUE PRESENTED FOR REVIEW .....................5

STATEMENT OF FACTS ......................................................6

SUMMARY OF ARGUMENT ................................................10

STANDARD OF REVIEW ...................................................14

ARGUMENT ..................................................................16

### POINT I

THE DISTRICT COURT ERRED TO GRANT IN PART THE
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ...............16

I.    DELIBERATE INDIFFERENCE CLAIMS SHOULD
NOT BE DISMISSED ..................................................16

    A.    The District Court Failed to Find a Delay in Treating
the Decedent's Cardiac Disease Can be a Sufficiently
Serious Deprivation .............................................17

    B.    The District Court Erred in Engaging in Fact-finding
Whether the Defendants' Medical Staffs were Aware
of the Decedent's Chest Pains .................................24

    C.    The District Court Erred to Find that "Plaintiffs Evidence
is Principally Offered in a Collective Manner and Does
not Focus on the Thoughts, Words, or Deeds of Individual
Actors." (A-5580, SPA-189, Dkt. 326 at 25).....................28

    D.    The District Court Erred to Overrule the Plaintiffs'
Objections to the CHS Medical Records as Lacking
Validity and Reliability .........................................29

i

E.    Judge Castel Erred To Rely on the Opinion of the
        Defendants Expert Witness, Dr. Stanley J. Schneller ........................ 30

**POINT II**

DISTRICT COURT ERRED TO GRANT IN PART THE
DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS
THE PLAINTIFFS' COMPLAINT .......................................................... 31

I.    PLAINTIFFS' FEDERAL CLAIMS UNDER FOURTEENTH
      AMENDMENT DUE PROCESS AS TO NYCCO DOES 1-10; MR.
      PONTE, DR. RAJU, MS. YANG, AND MR. WITTY SHOULD
      NOT BE DISMISSED .................................................................... 32

      A.    NYCCO Does 1-10 .............................................................. 32

      B.    Mr. Ponte, Dr. Raju, Ms. Yang, and Mr. Witty ................................... 36

II.   PLAINTIFFS' STATE LAW CLAIMS AS TO
      THE SUPERVISOR LIABILITY, NEGLIGENT
      HIRING, TRAINING, OR SUPERVISION, SHOULD
      NOT BE DISMISSED .................................................................... 36

**POINT III**

THE DISTRICT COURT ABUSED THEIR DISCRETION IN
DENYING THE PLAINTIFFS' MOTION FOR SPOLIATION
SANCTIONS ................................................................................ 39

I.    MAGISTRATE JUDGE WANG'S OCTOBER 29, 2019
      ORAL ORDER (A-1380) AND AUGUST 17, 2020
      OPINION & ORDER (A-1745-1757) ARE CLEARLY
      ERRONEOUS AND CONTRARY TO LAW ............................................. 41

      A.    The District Court's Conclusions that Defendants
            Had no Duty to Preserve the Evidence are Based on
            an Erroneous Determination of Law and on Clearly
            Erroneous Factual Findings.................................................... 41

PAGE

1.     Magistrate Judge Wang Exaggerated the Number of Staff Hours Needed to Preserve Relevant Surveillance Video Recordings..................................42

2.     Magistrate Judge Wang Failed to Conduct her "Proportionality" Analyses with respect to "Duty to Preserve" ESI at Issue..........................................43

    (a)    Video Surveillance Recordings .......................................43

    (b)    Telephone Recordings ....................................................44

B.     Defendants Have the Duty to Preserve the Video Surveillance Recordings and the Telephone Recordings...................45

    1.     Defendants' Obligations to Preserve Evidence were Triggered upon the Death of the Decedent .....................45

    2.     Defendants' Obligations to Preserve Evidence were at Least Triggered by the Notice of Claims Served upon the Defendants...........................................................................46

    3.     Telephone Recordings Should Have been Preserved ..............48

    4.     Burden of Implementing Litigation Holds to Preserve Evidence Does not Shift to Plaintiffs in the Instant Case.........49

II.     MAGISTRATE JUDGE WANG ABUSED HER DISCRETION IN HER AUGUST 17, 2020 OPINION & ORDER DENYING PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS .....................51

A.     Magistrate Judge Wang Abused her Discretion, Misplaced the Law and Failed to Deny the Defendants' Local Rule 6.3 Motion as Untimely................................................................................51

B.     Magistrate Judge Wang Abused her Discretion, Misplaced the Law, and Procedural Improperly in Rendering Her August 17, 2020 Memorandum Opinion & Order Under Rule 60(b)(6) .....................................................................................51

**PAGE**

C.    Magistrate Judge Wang's August 17, 2020 Memorandum Opinion & Order (A-1745-1757) is an Abusing of her Discretion and Clearly Erroneous as a Matter of Substance ..............51

    1.    There are No "Extraordinary Circumstances" Justifying Relief Under Rule 60(b)(6) ......................................54

        (a)    "Manifestly Unjust" Does not Constitute "Extraordinary Circumstances" Justifying Relief Under Rule 60(b)(6)..............................................55

        (b)    Counsels' Negligence Does not Constitute "Extraordinary Circumstances" Justifying Relief Under Rule 60(b)(6)..............................................55

III.    MAGISTRATE JUDGE WANG ABUSED HER DISCRETION IN HER AUGUST 20, 2019 OPINION & ORDER DENYING PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS UNDER RULE 37(e)(2) ................................................................55

A.    The Conduct that Defense Counsels Expressed no Remorse to the Destroyed ESI at Issue Caused by their Nonfeasance Reveals that Defendants Acted with the Intent to Deprive Plaintiffs of Evidence under the Totality of Circumstances ..............56

B.    It is not just the Gross Negligence; but the Defense Counsels' Intentional Acts to Deprive Plaintiffs of the ESI at Issue ..................57

    1.    As Exceptionally Experienced and Highly Competent Litigation Attorneys, Defense Counsels Ordinarily will not Neglect their Due Diligence to Implement Litigation Holds ........................................................57

    2.    Not to Implement Litigation Holds is the Defense Counsels' Calculated Tactics to Litigate the Instant Case ........................................................58

    3.    Exercise Due Diligent Duty to Preserve the ESI at Issue in on the Defense Counsels, not on the Plaintiffs' Counsel ................................................61

**PAGE**

C.     Plaintiffs' Counsel did not Cause Years Delay...................................61

## POINT IV

THE DISTRICT COURT ABUSED HIS DISCRETION IN
DENYING THE PLAINTIFFS' MOTION FOR LEAVE TO
AMEND THE COMPLAINT, SUBSTITUTING NAMED
DEFENDANTS FOR THE DOE DEFENDANTS .................................................63

CONCLUSION .......................................................................................64

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

## TABLE OF AUTHORITY

### Cases

PAGE

*Aczel v. Labonia,*
 584 F.3d 52, 69 (2d Cir. 2009) ....................................................86

*Adkins v City of New York,*
 43 N.Y.2d 346 [N.Y. Ct. of Appeals, 1977]...................................65

*Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,*
 473 F.3d 450 (2d Cir. 2007) .........................................................49

*Alvarado v. Manhattan Worker Career Ctr.,*
 No. 01 Civ. 9288, 2003 WL 22462032 (S.D.N.Y. Oct. 30, 2003)...............88

*Am. Civil Liberties Union v. Dep't of Def.,*
 406 F. Supp. 2d 330 (S.D.N.Y. 2005) ................................82, 86, 87

*Ametex Fabrics, Inc. v. Just In Materials, Inc.,*
 140 F.3d 101 (2d Cir. 1998) .........................................................30

*An v. City of New York,*
 No. 16 Civ. 5381 (LGS),
 2017 WL 2376576 (S.D.N.Y. Jun. 1, 2017)...........................................43, 44

*Arrowhead Capital Fin., Ltd. v. Seven Arts Ent't, Inc.,*
 No. 14-cv-6512,
 2016 WL 4991623 (S.D.N.Y. Sept. 16, 2016) .............................................97

*Ashcroft v. Iqbal,*
 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) .......30, 31, 38, 44, 45

*Associated Press v. U.S. Dep't of Def.,*
 395 F. Supp. 2d 17 (S.D.N.Y. 2005) ...........................................................78

*Avery v. New York City Tr. Auth.,*
 138 A.D.3d 770, 29 N.Y.S.3d 499 [2d Dep't. 2016] ...................................66

*Barsoum v. N.Y.C. Hous. Auth.,*
 202 F.R.D. 396 (S.D.N.Y. 2001)...................................................................93

**PAGE**

*Baskin v. Hawley,*
    810 F.2d 370 (2d Cir. 1987) .......................................................76

*Beary v. City of Rye,*
    44 N.Y.2d 398, 377 N.E.2d 453,
    406 N.Y.S.2d 9 [N.Y. Ct. of Appeals, 1978] ...............................65

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................23, 30, 31, 38

*Boule v. Hutton,*
    170 F. Supp. 2d 441 (S.D.N.Y. 2001) ..........................................83

*Bowers v. City of New York,*
    147 A.D.3d 894 [2d Dep't. 2017]...........................................65, 66

*Caiozzo v. Koreman,*
    581 F.3d 63 (2d Cir. 2009) ......................................................31

*Cancel v. Mazzuca,*
    No. 01 Civ. 3129 (NRB),
    2002 WL 1891395 (S.D.N.Y. Aug. 15, 2002) ...............................75

*Cash v. Cty. of Erie,*
    654 F.3d 324 (2d Cir. 2011) .....................................................44

*CAT3, LLC v. Black Lineage, Inc.,*
    164 F. Supp. 3d 488 (S.D.N.Y. 2016) ..........................................99

*Chan v. Triple 8 Palace, Inc.,*
    No. 03 Civ 6048,
    2005 WL 1925579 (S.D.N.Y. Aug. 11, 2005) ...............................72

*Charter Oak Fire Ins. Co. v. Nat'l Wholesale Liquidators,*
    No. 99 Civ 5756 (JSR),
    2003 WL 22455321 (S.D.N.Y. Oct. 29, 2003) ..............................75

*Collins Dev. Corp. v. Marsh McLennan, Inc.,*
    No. 90 Civ 4675,
    1991 WL 135605 (S.D.N.Y. July 18, 1991)...................................84

**PAGE**

*Colon v. Coughlin,*
    58 F.3d 865 (2d Cir.1995) ...............................................................44, 45, 47

*Colucci v. Beth Israel Med. Ctr.,*
    531 F. App'x 118 (2d. Cir. 2013) .........................................................87

*Cooter & Gell v. Hartmarx Corp.,*
    496 U.S. 384, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) ........................27, 50

*Cruz v. G-Star Inc.,*
    No. 17-cv-7685,
    2019 WL 2521299 (S.D.N.Y. Jun. 19, 2019).................................99

*EEOC v. KarenKim, Inc.,*
    698 F.3d 92 (2d Cir. 2012) .........................................................27

*Ehrenfeld v. Mahfouz,*
    489 F.3d 542 (2d Cir. 2007) .........................................................26

*Ehrens v. Lutheran Church,*
    385 F.3d 232 (2d Cir. 2004) .........................................................46

*First Fin. Sec., Inc. v. Freedom Equity Grp., LLC,*
    No. 15-cv-1893,
    2016 WL 5870218 (N.D.Ca. Oct. 7, 2016) .................................99

*Frankel v. ICD Holdings S.A.,*
    939 F. Supp. 1124 (S.D.N.Y. 1996) .......................................82, 83

*Freedom, N.Y., Inc. v. United States,*
    438 F. Supp. 2d 457 (S.D.N.Y. 2006) .........................................77

*Friedline v. N.Y. City Dep't of Educ.,*
    No. 06 Civ. 1836,
    2009 WL 37828 (S.D.N.Y. Jan. 5, 2009) .....................................84

*Fujitsu Ltd. v. Fed. Express Corp.,*
    247 F.3d 423 (2d Cir.), *cert. denied,*
    534 U.S. 891, 122 S.Ct. 206, 151 L.Ed.2d 146 (2001) ....................50, 51, 69

*Gonzalez v. Crosby,*
    545 U.S. 524, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005) ............................85

**PAGE**

*Grand River Enters. Six Nations, Ltd. v. King,*
No. 02 Civ. 5068 (JFK),
2009 WL 1739893 (S.D.N.Y. June 16, 2009) ........................................74, 76

*Green v. City of Mount Vernan,*
96 F. Supp. 3d 263 (S.D.N.Y. 2015) ............................................................46

*Hastings v. Maine-Endwell Central School District,*
676 F.2d 893 (2d Cir. 1982) ........................................................................76

*Hutchison v. Deutsche Bank Sec. Inc.,*
647 F.3d 479 (2d Cir. 2011) ........................................................................26

*In re Bear Stearns Cos., Inc. Sec., Derivative, and ERISA Litig.,*
08 MDL No. 1963,
2011 WL 321142 (S.D.N.Y. Feb. 1, 2011) ..................................................75

*In re Flag Telecom Holdings, Ltd. Sec. Litig.,*
236 F.R.D. 177 (S.D.N.Y. 2006) ..................................................................68

*In re Optionable Sec. Litig.,*
No. 07 Civ. 3753 (PAC),
2009 WL 1653552 (S.D.N.Y. June 15, 2009) ..............................................87

*Indem. Ins. Co. of N. Am. v. Reisley,*
153 F.2d 296 (2d Cir. 1946) (*on petition for reh'g*)....................................75

*Inesti v. Hicks,*
No. 11 Civ. 2596 (PAC) (AJP),
2012 WL 2362626 (S.D.N.Y. Jun. 22, 2012)........................................32, 43

*Jenkins v. City of New York,*
478 F.3d 76 (2d Cir. 2007) ..........................................................................44

*Johnson v. City of Shelby,*
135 S. Ct. 346 (2014)...................................................................................39

*Kelsey v. City of New York,*
306 F. App'x 700 (2d Cir. 2009)..................................................................31

*Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.,*
880 F.3d 620 (2d Cir. 2018) ....................................................26, 66, 72, 92

iv

PAGE

*Kronisch v. United States,*
 150 F.3d 112 (2d Cir. 1998) .......................................................59

*Kurzweil v. Phillip Morris Cos.,*
 Nos. 94 Civ 2373 (MBM), 94 Civ. 2576 (MBM),
 1997 WL 167043 (S.D.N.Y. April 9, 1997)............................82, 84

*Leatherman v. Tarrant County Narcotics Intelligence*
 *and Coordination Unit,*
 507 U.S. 163 (1993)...................................................................38

*LeBoon v. Lancaster Jewish Community Center Association,*
 503 F.3d 217 (3d Cir. 2007) .......................................................30

*Lichtenberg v. Besicorp Group Inc.,*
 204 F.3d 397 (2d Cir. 2000) .......................................................74

*Liljeberg v. Health Services Acquisition Corp.,*
 486 U.S. 847, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988) ..........85

*Linde v. Arab Bank, PLC,*
 706 F.3d 92 (2d Cir. 2013) .........................................................75

*Link v. Wabash Railroad Co.,*
 370 U.S. 626 (1962)...................................................................88

*Lundy v. Catholic Health Sys. of Long Island Inc.,*
 711 F.3d 106 (2d Cir. 2013) ..................................................30, 31

*Lykes Pasco, Inc. v. Ahava Dairy Prods. Corp.,*
 No. CV-97-0652,
 1998 WL 427570 (E.D.N.Y. Jan. 26, 1998)................................83

*Matarese v. LeFevre,*
 801 F.2d 98 (2d Cir. 1986) .........................................................85

*Matter of Castro,*
 140 A.D.3d 644 [1st Dep't. 2016]...................19, 20, 43, 44, 47

*Mayor & City Council of Baltimore v. Citigroup, Inc.,*
 709 F.3d 129 (2d Cir. 2013) .......................................................31

PAGE

*Monell v. Dep't of Soc. Servs.,*
   436 U.S. 658 (1978)..................................................19, 46, 98

*Motorola Credit Corp. v. Uzan,*
   561 F.3d 123 (2d Cir. 2009) ......................................................77

*Mpala v. Gateway Cmty. Coll.,*
   717 F. App'x 96 (2d Cir. 2018) ..................................................85

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,*
   709 F.3d 109 (2d Cir. 2013) .......................................................26

*Nemaizer v. Baker,*
   793 F.2d 58 (2d Cir. 1986) ............................................77, 86, 88

*Ottoson v. SMBC Leasing and Finance, Inc.,*
   268 F. Supp. 3d 570 (S.D.N.Y. 2017) ........................................97

*Passlogix, Inc. v. 2FA Technology, LLC,*
   708 F. Supp. 2d 378 (S.D.N.Y. 2010) ...................................59, 72

*Pension Comm. of the Univ. of Montreal Pension Plan v.*
   *Banc of Am. Secs, LLC,*
   2010 WL 184312 (S.D.N.Y. 2010) ...................................70, 72, 73

*Polsby v. St. Martin's Press, Inc.,*
   No. 97 Civ. 960 (MBM),
   2000 WL 98057 (S.D.N.Y. Jan. 18, 2000) ...................................78

*"R" Best Produce v. Disapio,*
   540 F.3d 115 (2d Cir. 2008) ...................................................29, 30

*Raspardo v. Carlone,*
   770 F.3d 97 (2d Cir. 2014) .....................................................39, 40

*Regulatory Fundamentals Grp. LLC v.*
   *Governance Risk Mgmt. Compliance, LLC,*
   13 Civ. 2493 (KBF),
   2014 WL 3844796 (S.D.N.Y. Aug. 5, 2014) ...............................69

vi

**PAGE**

*Ruotolo v. City of New York,*
 514 F.3d 184 (2d Cir. 2008) ........................................................77

*Ryan v. U.S. Lines Co.,*
 303 F.2d 430 (2d Cir. 1962) .......................................................81

*S.E.C. v. McNulty,*
 137 F.3d 732 (2d Cir. 1998) ...............................................88, 100

*S.E.C. v. Save the World Air, Inc.,*
 No. 01 Civ. 11586 (GBD),
 2005 WL 1208525 (S.D.N.Y. May 19, 2005) .............................75

*Sank v. City Univ. of N.Y.,*
 No. 94 Civ. 0253 (RWS),
 1997 WL 65910 (S.D.N.Y. Feb. 13, 1997) ...........................76, 77

*Scalera v. Electrograph Systems, Inc.,*
 262 F.R.D. 162 (E.D.N.Y. 2009)..................................................93

*Schwartz v. Capital Liquidators, Inc.,*
 984 F.2d 53 (2d Cir. 1993) .........................................................84

*Shaffer v. RWP Group, Inc.,*
 169 F.R.D. 19 (E.D.N.Y. 1996).....................................................99

*Shrader v. CSX Transp., Inc.,*
 70 F.3d 255 (2d Cir. 1995) .........................................................77

*Smith v. Hogan,*
 794 F.3d 249 (2d Cir. 2015) .......................................................26

*Staehr v. Hartford Financial Serv,*
 547 F.3d 406 (2d Cir. 2008) ...........................................41, 45, 47

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada,*
 374 F.3d 158 (2d Cir. 2004) ..................................................80, 86

*Stevens v. Miller,*
 676 F.3d 62 (2d Cir. 2012) .........................................................85

**PAGE**

*Strong v. City of New York,*
   112 A.D.3d 15, 973 N.Y.S.2d 152 [1st Dep't. 2013]....................................61

*Swierkiewicz v. Sorema, N.A.,*
   534 U.S. 506 (2002).........................................................................................38

*Telecom International Am. Ltd. v. AT & T Corp.,*
   189 F.R.D. 76, 81 (S.D.N.Y. 1999)..............................................................70

*Thomas E. Hoar, Inc. v. Sara Lee Corp.,*
   882 F.2d 682 (2d Cir. 1989) .........................................................................76

*Toussie v. County of Suffolk,*
   No. 01 Civ. 6716,
   2007 WL 4565160 (E.D.N.Y. Dec. 21, 2007).............................................71

*Town of Norwood, Mass. v. New England Power Co.,*
   202 F.3d 408 (1st Cir. 2000).........................................................................30

*Treppel v. Biovail Corp.,*
   249 F.R.D. 111 (S.D.N.Y. 2008)..................................................................71

*Tri-Star Pictures, Inc. v. Leisure Time Prod., B.V.,*
   88 Civ. 9127 (DNE),
   1992 WL 296314 (S.D.N.Y. Oct. 6, 1992)...................................................82

*Turner v. Hudson Transit Lines, Inc.,*
   142 F.R.D. 68 (S.D.N.Y. 1991).............................................................59, 72

*United Airlines, Inc. v. Brien,*
   588 F.3d 158 (2d Cir. 2009) .........................................................................85

*United States v. Cirami,*
   563 F.2d 26 (2d Cir. 1977) ...........................................................................88

*United States v. Erdoss,*
   440 F.2d 1221 (2d Cir. 1971) .......................................................................86

*United States v. Fabian,*
   312 F.3d 550 (2d Cir. 2002) .........................................................................27

**PAGE**

*United States v. Parkes,*
   497 F.3d 220 (2d Cir. 2007) .........................................................27

*United States v. Int'l Bhd. of Teamsters,*
   247 F.3d 370 (2d Cir. 2001) .......................................................80

*VOOM HD Holdings LLC v. EchoStar Satellite L.L.C.,*
   93 A.D.3d 33, 939 N.Y.S.2d 321 [1st Dep't. 2012]....................60

*Walker v. City of New York,*
   974 F.2d 293 (2d Cir. 1992) .......................................................44

*Welsh v. United States,*
   844 F.2d 1239 (6th Cir. 1988) ...................................................99

*West v. Goodyear Tire & Rubber Co.,*
   167 F.3d 776 (2d Cir. 1999) ...........................................27, 49, 50

*Williams v. Justices of NYS Sup. Ct. App. Div. 1st Dep't,*
   19-cv-2476 (CM) (S.D.N.Y. Jan. 17, 2020).............................74

*Winbush v City of Mount Vernon,*
   306 N.Y. 327 [N.Y. Ct. of Appeals, 1954]................................65

*Zubulake v. UBS Warburg LLC,*
   220 F.R.D. 212 (S.D.N.Y. 2003) ("*Zubulake IV*")................60, 71

*Zubulake v. UBS Warburg LLC,*
   229 F.R.D. 422 (S.D.N.Y. 2004) ("*Zubulake V*") ...................70, 72, 94, 101

**PAGE**

## <u>U.S. Constitution</u>

U.S. Const. amend. V .................................................................3, 28

U.S. Const. amend. VIII ..............................................................3, 28

U.S. Const. amend. XIV, § 1 ...............................................3, 13, 28, 29

## <u>Statutes</u>

28 U.S.C. § 1291 ...........................................................................12

28 U.S.C. § 1331 ...........................................................................11

28 U.S.C. § 1343 ...........................................................................11

28 U.S.C. § 1367 ...........................................................................11

42 U.S.C. § 1983 .............................................................3, 63, 101

Americans With Disabilities Act of 1990,
Pub. L. No. 101-336, 104 Stat. 328 (1990) .....................................3

## <u>Rules</u>

### <u>Federal Rules of Appellate Procedure</u>

Local Rule 42.1 .........................................................................9, 10

### <u>Federal Rules of Civil Procedure</u>

Local Civil Rule 6.3 ............................................................. *passim*

Rule 12(b)(6).................................................................2, 26, 29

Rule 15(a)...........................................................................................2

Rule 26 ..........................................................................................92

Rule 30(b)(6)................................................................................18, 40

Rule 37 ......................................................................................75, 85

**PAGE**

Federal Rules of Civil Procedure (con't)

Rule 37(e)................................................................26, 59, 97

Rule 37(e)(1)..............................................................5

Rule 37(e)(2)........................................................ *passim*

Rule 59(e)................................................................30

Rule 60(b)........................................................ *passim*

Rule 60(b)(1)..............................................................86, 88

Rule 60(b)(2)........................................................ *passim*

Rule 60(b)(3)..............................................................86, 88

Rule 60(b)(4)..............................................................86, 88

Rule 60(b)(5)..............................................................86, 88

Rule 60(b)(6)........................................................74, 85, 86, 87, 88

Rule 72(a)........................................................ *passim*

New State Codes, Rules and Regulations

N.Y. Const.................................................................3, 4

General Municipal Law § 50-e ................................................65

General Municipal Law § 50-h ................................................63, 64

Secondary Authorities

21st ANNUAL REPORT OF N Y JUDICIAL CONFERENCE, 1976, p 302........................65

Report of Advisory Committee on Civil Rules, App. B-15 (Sept. 2014), available at <http://www.uscourts.gov/uscourts/RulesandPolicies/rules/Reports/ST09-2014.pdf>. Committee Notes on Rules..........................................59

## PRELIMINARY STATEMENT

Plaintiffs-Appellants Man Zhang and Chunman Zhang, individually, and as administrators of the estate of Zhiquan Zhang, the decedent, ("Plaintiffs" or "Appellants"), *via their undersigned counsel*, commenced the instant action on July 17, 2017, (A-68-117) (Dkt. 1)[1], in the United States District Court for the Southern District of New York ("district court") against the defendants The City of New York ("CONY"), the New York City Department of Correction ("NYCDOC" or "DOC"), Rikers Island Facilities, New York City Health and Hospitals Corporation ("NYCHHC"), Corizon Health, Inc. ("Corizon"), Bill de Blasio, individually, and as Mayor of the City of New York, Joseph Ponte, individually, and as then Commissioner of the NYCDOC, Ram Raju, individually, and as then President of NYCHHC, Patsy Yang, individually, and as NYCHHC's Senior Vice President for Correctional Health Services, Karey Witty, individually, and as the Corizon's Chief Executive Officer, New York City Correction Officers ("NYCCO"), "John and Jane Does 1-10", in their individual and official capacities, NYCHHC employees and agents, "John and Jane Does 11-20", in their individual and official capacities, the Corizon's employees and agents, "John and Jane Does 21-30", in their individual and official capacities, (collectively referred to as the "Defendants").

---

[1] "A" refers to the Appendix; and "Dkt." refers to the district court docket No. 1:17-cv-05415.

Defendants defaulted and a default judgment was entered against the Defendants on September 1, 2017. (A-28) (Dkt. 26). The default was vacated by stipulation on October 11, 2017, (A-29) (Dkt. 35).

On June 28, 2018, Honorable John F. Keenan ("Judge Keenan") granted the Defendants' motion to dismiss the Plaintiffs' certain federal claims of 42 U.S.C. § 1983 and certain new York State law Claims. (A-220-258) (SPA-1) (Dkt. 126).[2] The Plaintiffs' federal claims of 42 U.S.C. § 1983 under Fourteenth Amendment Due Process against Defendants NYCHHC Does 11-20 and Corizon Does 21-30, and City of New York, New York City Department of Corrections, Rikers Island Facilities, NYCHHC, and Corizon (the "Municipal Defendants"); as well as New York State law claims under wrongful death, and negligence and malpractice survived the Defendants' motion to dismiss. (A-242-247, -252) (SPA-1) (Dkt. 126).

On September 19, 2019, Judge Keenan denied the Plaintiffs' motion for leave to amend the Complaint. (A-457-474) (SPA-40) (Dkt. 198).

On July 20, 2020, Judge Keenan denied the Plaintiffs' motion for reconsideration. (A-494-501) (SPA-58) (Dkt. 233).

On August 20, 2019, Magistrate Judge Wang granted the Plaintiffs' motion for spoliation sanctions against Defendants with respect to video surveillance

---

[2] "SPA" refers to the Special Appendix.

recordings and telephone recordings under Rule 37(e)(1); but denied the Plaintiffs' motion under Rule 37(e)(2). (A-1238-1260) (SPA-66) (Dkt. 190).

On September 6, 2019, Defendants filed an ***untimely*** motion before Magistrate Judge Wang for reconsideration of her August 20, 2019 Opinion & Order under Local Civil Rule 6.3. (A-1272-1362) (Dkt. 195, 196, 197, 197-1, 197-2, 197-3). Plaintiffs opposed the Defendants' motion. (A-1363-1367) (Dkt. 200).

On August 17, 2020, after reconsideration, Magistrate Judge Wang denied the Plaintiffs' motion for spoliation sanctions in its entirety. (A-1745-1757) (SPA-128) (Dkt. 234).

On August 31, 2020, Plaintiffs timely filed the Rule 72(a) objections to the Magistrate Judge Wang's August 17, 2020 Memorandum Opinion & Order. (A-1758-1787) (Dkt. 236, 237, 238-1). After more than six (6) weeks late, on October 14, 2020, Defendants filed their untimely opposition without even asking for extension of time to file late opposition. (A-1788-1803) (Dkt. 239). Sixteen days later, Defendants asked Judge Keenan to accept their late filed opposition as timely and Judge Keenan accepted over the opposition of Plaintiffs. (A-1806-1807) (Dkt. 241); (A-1808-1809) (Dkt. 248).

On March 24, 2021, Judge Keenan overruled the Plaintiffs' objections to Magistrate Judge Wang's oral and written orders of August 20, 2019, October 29, 2019, and August 17, 2020. (A-1816-1826) (SPA-141) (Dkt. 251).

3

On December 22, 2022, Honorable P. Kevin Castel ("Judge Castel") denied the Plaintiffs' motion for leave to amend the Complaint, substituting named defendants for the Doe defendants. (A-2375) (SPA-152) (Dkt. 273).

On September 28, 2023, Judge Castel granted the Defendants' motion for summary judgment on the deliberate indifference claims and dismissed the Plaintiffs' *Monell* claims. (Dkt. 326). Judge Castel denied the Plaintiffs' motion *in limine* to preclude the expert report, affidavit, and testimony of the Defendants' medical expert Dr. Stanley J. Schneller. Judge Castel also declined to exercise supplemental jurisdiction over the Plaintiffs' state law wrongful death, negligence and medical malpractice claims against the remaining Municipal Defendants.

Plaintiffs' interrogatory appeal under the docket number of 20-2757-cv was dismissed by this Court for lack of jurisdiction on January 13, 2022. (Case No. 20-2757, Doc. 154).

This appeal followed. (A-1-5) (Dkt. 327).

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over the Plaintiffs' suit under 28 U.S.C. §§ 1331, 1343, 1367, and 42. U.S.C. § 1983.

This Court has appellate jurisdiction over this appeal under 28 U.S.C. § 1291 for final decisions and orders of the district court.

## STATEMENT OF THE ISSUE PRESENTED FOR REVIEW

Issue 1:    Whether the district court erred in granting the Defendants' motion for summary judgment on the deliberate indifference claims, where the district court's decision was based on an erroneous view of the law, on a clearly erroneous assessment of the evidence, and rendered a decision that cannot be located within the range of permissible decisions.

Issue 2:    Whether the district court made clearly erroneous decisions in dismissing the Plaintiffs' federal claims under Fourteenth Amendment due process as to NYCCO Does 1-10, Mr. Ponte, Dr. Raju, Ms. Yang, and Mr. Witty; and state law claims of negligent supervision; duty to supervise and train employees and staff, where Plaintiffs' Complaint supports a "plausible" claim, and where the district court's decision was based on an erroneous view of the law, on a clearly erroneous assessment of the evidence, and rendered a decision that cannot be located within the range of permissible decisions.

Issue 3:    Whether the district court abused his discretion in overruling Plaintiffs' Rule 72(a) objections to the Magistrate Judge's decision denying the Plaintiffs' motion for spoliation sanctions under Rule 37(e)(1) and 37(e)(2), where Defendants knowingly have never implemented any litigation holds and intentionally destroyed the video surveillance recordings and telephone recordings, where Plaintiffs have suffered irreparable harms due to the loss of the ESI at issue, and where the district court based the ruling on an erroneous view of the law, on a clearly erroneous assessment of the evidence, and rendered a decision that cannot be located within the range of permissible decisions.

Issue 4:    Whether the district court abused his discretion in denying the Plaintiffs' motion for leave to amend the Complaint, substituting named defendants for the Doe defendants, where the district court based his ruling on an erroneous view of the law, on a clearly erroneous assessment of the evidence, and rendered a decision that cannot be located within the range of permissible decisions.

## STATEMENT OF FACTS

Judge Keenan's findings that "Plaintiffs have sufficiently pleaded that Mr. Zhang was actually deprived of adequate medical care" has become the law of this case since Defendants have never appealed this determination. (A-239) (SPA-20).

Zhiquan Zhang ("Zhang" or "decedent") died in the Defendants' custody on April 18, 2016 after he was detained for one year since April 18, 2015[3]. (A-82, ¶ 67). Sadly, Zhang is no longer alive to tell jurors that he had suffered severe chest pain; but Defendants recklessly and knowingly delayed his treatment for at least eight (8) months after September 5, 2015 until his chest pain culminated in a heart attack on April 18, 2016. There were video surveillance recordings and telephone recordings to corroborate the Plaintiffs' complaint. The video surveillance recordings could have revealed that the decedent reported pain and suffering to correction officers during the night but was made to wait until the following morning to make sick calls. (A-815-817, Tr. 68:8-71:3). The video surveillance recordings could have also revealed the decedent's facial expression and movements, his interactions with correction officers, and the correction officers' responses. (A-1055; -1002, -1003, -1007, Tr. 11:17-12:13; 13:15-22; 29:7-16; 31:8-32:6). Telephone recordings between the decedent and his family

---

[3] Defendants' Answer denied that Mr. Zhang was detained in the Rikers Island jail facility. (A-127, ¶ "EIGHTH"). Defendants' Motion to Dismiss, however, admitted that Mr. Zhang "was incarcerated at Rikers Island while awaiting trial between April 2015 and April 2016." (A-155).

members and friends made approximately weekly during the period of April 18, 2015 through April 18, 2016 could have revealed that the decedent made sick calls for his chest pains; but Defendants recklessly ignored his complaint for his severe chest pains and left shoulder pains, and recklessly delayed the treatment of his severe chest pains. (A-1055).

Defendants have never implemented any litigation hold and intentionally destroyed these relevant video surveillance recordings and telephone recordings.

The decedent was one in a dreadfully long line of individuals subjected to utterly atrocious conditions while in the custody of the Defendants. This is not a simple medical malpractice, negligence, or wrongful death case, (A-155), although Plaintiffs do allege it as the causes of action herein. This is a case rooted in decades of palpably systematic deficiencies of health, medical care and attention provided to the inmates in the custody of the NYCDOC's Rikers Island jail facility, which contributed to and culminated in the death of the decedent. The palpably systematic deficiencies of health, medical care and attention is not merely a matter of opinion of the Plaintiffs herein, it is the subject of numerous State and federal-sanctioned investigative reports finding the medical care to be horribly inadequate and instructing the Defendants to improve same.

Defendants knew and should have known the palpably systematic deficiencies of health, medical care and attention provided to the inmates in the

custody of the Rikers Island jail facility through numerous internal investigation reports and public reports such as New York State Commission of Correction's Annual Reports from 2011 to 2018. (A-74, ¶ 24). According to the Annual Reports, there were 12 deaths in 2011, 25 deaths in 2013, 10 deaths in 2014, 12 deaths in 2015, and 15 deaths in 2016. <https://scoc.ny.gov/reports.htm> (last visited 7/18/2021). After years of investigations, the New York State Commission of Correction published the report of "The Worst Offenders – Report: The Most problematic Local Correctional Facilities of New York State" in February 2018, (A-266), indicating the following:

> "Rikers Island continues to be plagued by managerial failures, significant structural problems, regulatory compliance failures, identified deficiencies that remain unaddressed, and unabated harm to both staff and inmates alike. The Commission has sought to assist Rikers management in addressing these and many other deficiencies, and facilitate improvements, but those efforts have not been successful, further highlighting the need for closure of all jail facilities located on Rikers Island.

> "This comprehensive report's irrefutable facts make clear what is aptly described as a deeply disturbing and discouraging situation. First, the evaluations of Rikers Island reveal extensive and systemic non-compliance with fundamental and compulsory regulations intended to provide for a safe, stable and humane correctional system. Second, the DOC has demonstrated both an unwillingness and inability to take necessary actions to remedy identified violations, often concerning facility safety and security.

> ". . . . A review of inmate mortality cases includes numerous instances where a death was attributable to deficient medical care, substandard mental health services, or inadequate custody and supervision by security staff. . . . Rikers Island is, and has been, violating essential constitutional protections and State laws."

(A-271).

Defendants knowingly ignored various incidents and complaints formed as the basis of such reports and recklessly failed to take proper actions upon the recommendations by such reports. Defendants Rule 30(b)(6) witness Captain Nathaniel Bialek testified that Defendants were not aware of these investigations and subsequent reports. (A-404, ¶ 183) (A-347, -350).

Although Defendants' correction officers and medical staffs, individually and collectively, were aware of that the decedent suffered severe chest pains, exhibited symptoms consistent with an increased risk of a heart attack, and continually and repeatedly begged for prompt medical care, they recklessly failed to refer the decedent to a cardiac stress test or other diagnostic procedures for over eight (8) months, causing undue delay to treat the decedent's cardiovascular disease, while the decedent could have been saved by prompt treatment.

Accordingly, the Defendants' malfeasance, misfeasance, and/or nonfeasance are the proximate cause of the decedent's death.

## SUMMARY OF ARGUMENT

The decedent's tragedy death is not a simple medical malpractice, negligence, and wrongful death case caused by Defendants. Although the decedent had sufficiently serious medical needs during his detention, Defendants' correction officers made the decedent to wait, delaying his treatment; and Defendants' medical staffs failed to make appropriate assessment of the decedent's cardiac risk factors in the subsequent medical encounters after September 5, 2015, and failed to refer, *not just delayed,* the decedent to the stress test with appropriate treatments, causing over eight (8) months delay. (A-4161) (Dkt. 296-8.). Therefore, Defendants' correction officers and medical staffs exhibited deliberate indifference to the decedent's serious medical needs, which contributed to and culminated in the death of the decedent.

Although the Defendants' medical staffs, such as Dr. George Gainor on June 9, 2015 knew that the decedent had his "pain on the left side of chest for the last 4 days", (A-3757, Dkt. 294, ¶ 7), Dr. Muhammad Zaman on September 5, 2015 knew that the decedent had severe chest pains, they failed to better assess the decedent's risk factors for cardiac disease. Although Dr. Zaman referred the decedent to Lincoln Hospital for treatment, Dr. Zaman failed to refer the decedent to the follow up testing, *e.g.,* stress test. In the subsequent medical encounters, although the decedent complained for his chest pains and left shoulder pains, the

10

Defendants' medical staffs failed to document the decedent's chest pain to the CHS medical records.

In February, 2015, after the decedent complained for his chest pains, the decedent's fellow inmate Jose Requena asked the Defendants' correction officer "Ms. Porter, 'Can you send him to the hospital?'" (A-1014-1015, Tr. 14:18-22). And Porter replied that, "Yes, I will send him to the hospital." (*Id.*). The CHS medical records, *however,* reveals that the descendent was not sent to any hospital at that time.

After the decedent's death review, Defendants admitted that the Defendants' medical staffs (1) should have made better assessment of the decedent's risk factors for cardiac disease; (2) should have documented the use of an interpreter; (3) should have made the appropriate consideration of cardiac risk factors; and (4) should have referred the decedent to the follow up testing or a stress test upon the decedent's return from the hospital or in a "subsequent chronic care encounter[]". (ECF 296-8 at 4.)

Therefore, the Defendants' delay in the treatment of the decedent's significant ischemic coronary artery disease caused by the Defendants' failure to better assess the decedent's risk factors for cardiac disease, to make the appropriate consideration of cardiac risk factors, and to refer the decedent to the follow up

testing or a stress test upon the decedent's return from the hospital or in the subsequent chronic care encounters constitute deliberate indifference.

Judge Keenan made clearly erroneous determination that Plaintiffs' allegations were not sufficient enough to implicate NYCCO Does 1-10 to the violation of the decedent's Fourteenth Amendment Due Process constitution right. Plaintiffs, however, could base on the public available information to form their allegations in the Complaint. Judge Keenan should not hold Plaintiffs to a high standard of pleading to detail each and every incident occurred to the decedent. *Twombly* only asks for plausible grounds for liability, not a probability at the pleading stage.

For NYCCO Does 1-10's supervisors, that their colleague Captain Pendergrass was federally indicted for thwarting the efforts of providing medical care and attention to the inmate was more than enough the "storm warnings" to trigger their duty to investigate and change the policy or policies concerning the care, custody, and control of the inmate in the Rikers Island. Their nonfeasance, misfeasance or malfeasance for failure to correct the policy contributed to the death of the decedent, which was a proximate cause of the decedent's constitutional deprivation.

Therefore, upon the Court's *de novo* review, Plaintiffs submit to the Court to find that the district court erred to grant the Defendants' motion for summary

judgment to dismiss the Plaintiffs' *Monell* claims and the Rule 12(b)(6) motion to dismiss the Plaintiffs' federal claims under the Fourteenth Amendment due process as to the NYCCO Does 1-10, Mr. Ponte, Dr. Raju, Ms. Yang, and Mr. Witty, and state law claims as to the supervisor liability, negligent hiring, training, or supervision, which decision is clearly erroneous and contrary to law.

As to the spoliation of video surveillance recordings and telephone recordings, Plaintiffs submit to the Court to find Defendants liable under Rule 37(e)(2) because Defendants intentionally destroyed the ESI at issue to weaken the Plaintiffs' case.

District court also abused his discretion in denying the Plaintiffs' motion for leave to amend the Complaint, substituting named defendants for Doe defendants.

## STANDARD OF REVIEW

### I. GRANT OF A RULE 12(b) MOTION TO DISMISS

Second Circuit will review a district court's decision to grant a Rule 12(b)(6) motion to dismiss *de novo,* "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC,* 709 F.3d 109, 119 (2d Cir. 2013) (citation omitted); *see also, Ehrenfeld v. Mahfouz,* 489 F.3d 542, 547 (2d Cir. 2007) (question of statutory interpretation is subject to *de novo* review).

### II. DENIAL OF A MOTION FOR LEAVE TO AMEND COMPLAINT

Second Circuit will review a district court's denial of leave to amend for "abuse of discretion." *Hutchison v. Deutsche Bank Sec. Inc.,* 647 F.3d 479, 490 (2d Cir. 2011).

### III. DENIAL OF A MOTION FOR RECONSIDEREATION

Second Circuit will review a district court's denial of a motion for reconsideration for "abuse of discretion." *Smith v. Hogan,* 794 F.3d 249, 253 (2d Cir. 2015).

### IV. DENIAL OF A MOTION FOR SPOLIATION SANCTIONS

The Second Circuit will review a district court's denial of Rule 37(e) motions for sanction for spoliation of evidence under an "abuse of discretion"

standard. *See Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.,* 880 F.3d 620, 627 (2d Cir. 2018).

## IV. GRANT OF SUMMARY JUDGMENT

The Second Circuit will review a district court's grant of summary judgment *de novo*. *See Brown v. Cara,* 420 F.3d 148, 152 (2d Cir. 2005). The Second Circuit will affirm the district court's grant of summary judgment to defendants only if, based on facts not in genuine dispute and drawing all inferences in favor of plaintiffs, defendants are entitled to judgment on the merits as a matter of law. *See id.; Taggart v. Time Inc.,* 924 F.2d 43, 45-46 (2d Cir. 1991). "[T]he standard for granting summary judgment mirrors the standard for judgment as a matter of law, such that the inquiry under each is the same," requiring the court to "review all of the evidence in the record". *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## ARGUMENT

### POINT I

### THE DISTRICT COURT ERRED TO GRANT IN PART THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

The analysis in this section is not hinged on the Court's decision whether Defendants had acted with the intent to deprive Plaintiffs of the use of the ESI at issue – the video surveillance footage and telephone recordings – in the litigation. In the event the Court finds that Defendants shall be sanctioned under Rule 37(e)(2) for spoliation of ESI at issue, Plaintiffs will request the Court to impose adverse inferences that Defendants had exhibited deliberate indifference to the decedent's serious medical needs.

### I.  DELIBERATE INDIFFERENCE CLAIMS SHOULD NOT BE DISMISSED.

Following the Second Circuit's decision in *Darnell*, deliberate indifference under the Fourteenth Amendment is defined objectively, not subjectively. *See Darnell v. Pineiro,* 849 F.3d 17, 29 (2d Cir. 2017). "[T]he pretrial detainee must prove that the defendant-official acted intentionally" in depriving adequate medical care "or recklessly failed to act with reasonable care . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35; *Kingsley v. Hendrickson,* 576 U.S. 389, 135 S.Ct. 2466, 192 L.Ed.2d 416 (2015). *Kingsley*

16

established "an 'objective' standard, *i.e.*, whether a 'reasonable person' would appreciate the risk to which the detainee was subjected". *Bruno v. City of Schenectady*, 727 F. App'x 717, 720 (2d Cir. 2018) (summary order). The district court, *however*, failed to analyze the Plaintiffs' deliberate indifference claim under the Fourteenth Amendment's objective *mens rea* prong that the Plaintiffs' due process right under the Fourteenth Amendment could be violated when an Defendants' correction officer or medical staff did not have subjective awareness that his or her acts (or omissions) had subjected the pretrial detainee to a substantial risk of harm.

### A. The district court failed to find a delay in treating the decedent's cardiac disease can be a sufficiently serious deprivation.

To state a claim for deliberate indifference to serious medical needs under § 1983, a pretrial detainee must satisfy a two-prong test. "The first requirement is objective: the alleged deprivation of adequate medical care must be sufficiently serious." *Spavone v. N.Y. State Dep't of Corr. Servs.,* 719 F.3d 127, 139 (2d Cir. 2013) (internal citations omitted). A medical need is "sufficiently serious" where it "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Charles v. Orange County,* 925 F.3d 73, 85 (2d Cir. 2019). Further, where the basis for the claim is a temporary delay or interruption in the provision of medical treatment, the relevant inquiry is whether the "particular risk of harm faced by a [detainee] due to the challenged deprivation

of care, rather than the severity of the [detainee's] underlying medical condition, considered in the abstract." *Smith v. Carpenter,* 316 F.3d 178, 186 (2d Cir. 2003).

Although "[t]here is evidence in the record that the administration of a cardiac stress test may have let to other diagnostic procedures, which, in turn, may have let to corrective measures for Zhang's cardiovascular disease", the district court erred to only "assume[] for the purpose of its analysis that Plaintiff has satisfied the 'objectively serious' prong." (A-5579, SPA-188; Dkt. 326, at 24).

On the contrary, many courts have found that suffering severe chest pains that culminate in a heart attack is sufficient to establish a serious medical need. *See Mata v. Saiz,* 427 F.3d 745, 753-55 (10th Cir. 2005). "[F]ailing to treat congestive heart failure, which can cause a patient's heart to stop beating, surely qualifies as a serious medical need." *Hill v. Curcione,* 657 F.3d 116, 122 (2d Cir. 2011). "[W]hen chest pains are a symptom of a more severe health problem, it has constituted a sufficiently serious medical condition under the Eighth Amendment." *See, e.g., Gayton v. McCoy,* 593 F.3d 610, 620-21 (7th Cir. 2010). Therefore, in the context of the Plaintiff's suffering of severe chest pains that culminate in a heart attack, Plaintiff has satisfied the objectively serious prong that his medical need is "sufficiently serious".

The district court in its analysis, *however*, erroneously failed to find that a defendant's delay in treating an ordinarily insignificant medical condition can

become a constitutional violation if the condition worsens and creates a substantial risk of injury, like the decedent's eventual heart attack.

Deliberate indifference can be find there is a delay in treating pain from an objectively serious medical condition. *See Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008). "If a medical condition is serious and time-sensitive, as a heart attack certainly is, and help is easy to obtain, 'even a brief, unexplained delay' in treatment may qualify as deliberate indifference." *Latko v. Cox,* No. 20-2634, 2021 WL 5234863, at *1 (7th Cir. Nov. 10, 2021); *Lewis v. McLean,* 864 F.3d 556, 563 (7th Cir. 2017) (referring to a delay of 4 90 minutes) (quoting *Perez v. Fenoglio,*792 F.3d 768, 777-78 (7th Cir. 2015)). Deliberate indifference can be found in cases where "necessary medical treatment is delayed for non-medical reasons." *Monmouth County Corr. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir.1987) (citing *Ancata v. Prison Health Servs.,* 769 F.2d 700, 704 (11th Cir. 1985)). "Delay in treating a condition that is painful even if not life-threatening may well constitute deliberate indifference. . . ." *Gonzalez v. Feinerman,* 663 F.3d 311, 315 (7 Cir. 2011); *see also Berry v. Peterman,* 604 F.3d 435, 441 (7 Cir. 2010) ("A significant delay in effective medical treatment also may support a claim of deliberate indifference, especially where the result is prolonged and unnecessary pain." (citation omitted)).

Although negligence alone cannot constitute deliberate indifference, in some circumstances, "a lengthy, unjustifiable delay in providing necessary medical treatment might evidence deliberate indifference[.]" *Gomez v. Cty. Of Westchester,* 649 F. App'x 93, 95 (2d Cir. 2016). Furthermore, "a significant delay in the treatment of a serious medical condition may, in the proper circumstances," constitute deliberate indifference. *Webb v. Hamidullah,* 281 Fed. Appx. 159, 166 (4th Cir. 2008).

In the instant case before this Court, Defendants had caused a significant delay of over ten (10) months from June 9, 2015 until the death of the decedent on April 18, 2016 in the treatment of the decedent's serious medical condition – severe chest pains that culminated in a heart attack on April 18, 2016. Defendants, *via* the CHS Inmate Death Review Annual Report, admitted that, "1. At [the decedent's] 06/09/15 encounter, risk factors for coronary artery disease were not appropriately weighed. Nor was there documentation that an interpreter was used. 2. On 09/05/15, upon [the decedent's] hospital return or in subsequent chronic care encounters, [the decedent's] should have been referred for a stress test." (A-4161) (Dkt. 296-8.).

The Defendants' foregoing report satisfies the deliberate indifference claim under the Fourteenth Amendment's objective *mens rea* prong. The subjective component asks whether the government official in question was "aware of facts

20

from which the inference could be drawn that a substantial risk of serious harm exists" and whether the official actually "dr[e]w the inference." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious. *See Id.* at 842, 114 S.Ct. 1970. In medical cases particularly, objective standards of proper care may be introduced as circumstantial evidence of what a medical provider knew. *See Mata v. Saiz,* 427 F.3d 745, 757-58 (10th Cir. 2005) (finding that prison regulations about treatment of chest pain could be circumstantial evidence of a prison medical provider's knowledge of the seriousness of such pain).

Furthermore, on June 9, 2015, Dr. George Gainor, who responded to an emergency call in the decedent's housing unit, noted "[The decedent] voices pain when breathing in for a couple of days" and "pain on the left side of chest for the last 4 days." (A-3756-3757, Dkt. 294, at ¶ 7). Preethy Philip, RN took [the decedent's] vital signs. (A-3757-3758, Dkt. 294, ¶ 8). Dr. Gainor performed a physical examination on the decedent and ordered an EKG on the decedent. (*Id.*). Dr. Gainor stated in his progress note on June 9, 2015 that he could not rule out angina that [the decedent] might have back then. (*Id.*). Dr. Gainor, *however*,

21

failed to better assess risk factors for cardiac disease and the need to document the use of an interpreter.

On September 5, 2015, Dr. Muhammad Zaman responded to an emergency call at the decedent's housing unit.  (A-3760-3761, Dkt. 294, at ¶ 14).  Dr. Zaman observed the decedent sitting in a chair with one hand on the left side of his chest. (*Id.*).  The medical record reveals that:

> "Assessments:  1. Chest pain, other – 786.59:  60 year old male with HTN, Hyperlipedemia, having chest pain, left sided, with mild SOB, no radiation of pain, pain is there since yesterday (***however we are not sure due to language barrier***); EKG showed sinus rhythm, First degree AV block, occasional PVC, old EKGs had similar chages*[sic]*, however, he had many rish*[sic]* factor for CADDD and we cannot be sure about the cause of pain without further W/U; Stat ASA andd NTG given, 911 called at about 10 AM".

(A-4010-4011) (Ex. E, Bates 79-80).

As admitted by Defendants after the decedent's death review, Dr. Zaman, *however*, failed to make an appropriate consideration of the decedent's cardiac risk factors and failed to refer the decedent to the follow up testing, *e.g.,* stress test. (A-4161) (Dkt. 296-8.).

The Defendants' medical personnel, including but not limited to Dr. Gainor, Preethy Philip, RN, and Dr. Zaman, in the subsequent chronic care encounters failed to make better assessment of the decedent's risk factors for cardiac disease and failed (not just delayed) to refer the decedent to the follow up testing or a

stress test. The Defendants' failure to diagnose the decedent's risk factors for cardiac disease for over ten (10) months from June 9, 2015 until the death of the decedent on April 18, 2016, and for over eight (8) months from September 5, 2015 until the death of the decedent on April 18, 2016 evidenced a lengthy and unjustifiable delay in providing necessary and serious medical treatment that eventually caused the decedent's death.

As the Plaintiff's expert, Dr. David A. Hess, opined that because "[t]he further work up of a cardiology evaluation or nuclear stress testing was never done", "[t]his deficiency in medical care directly lead to the decedent's death on April 18, 2016". (A-4203, Dkt. 296-12, at ¶ 47). Dr. David A. Hess further opined "to a reasonable degree of medical certainty that had a Stress Test ever been offered to the patient and performed, then clearly significant ischemic coronary artery disease would have been identified and could have been acted upon. On April 18, 2016, the patient was found to be in full cardiac arrest. . . . An autopsy revealed severe 3 vessel CAD with evidence of hypertensive heart disease as well." (A-4205, Dkt. 296-12, at ¶ 55).

Therefore, the Defendants' delay in the treatment of the decedent's significant ischemic coronary artery disease caused by the Defendants' failure to better assess the decedent's risk factors for cardiac disease, to make the appropriate consideration of cardiac risk factors, and to refer the decedent to the follow up

23

testing or a stress test upon the decedent's return from the hospital or in the subsequent chronic care encounters constitute deliberate indifference.

**B.    The district court erred in engaging in fact-finding whether the Defendants' medical staffs were aware of the decedent's chest pains.**

The district court erred to find that "plaintiffs have not come forward with any admissible evidence that any member of the medical staff understood Zhang to being making a complaint of chest pain."  (A-5581, SPA-190, Dkt. 326, at 26). The district court made the clearly erroneous finding that, "In response, plaintiffs offer evidence that on other occasions Zhang mentioned chest pain to his children or another detainee.  But complaints made to friends and family do not indicate awareness by the medical staff."  (*Id.*).

The "awareness by the medical staff" about the decedent's substantial risk of serious harm, *however,* is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.  *Farmer v. Brennan,* 511 U.S. at 837, 114 S.Ct. 1970.  A factfinder, not a judge in the district court, may make the finding of "awareness by the medical staff".  *Id.* at 842, 114 S.Ct. 1970.

There exists circumstantial evidence to allow a factfinder to draw inferences that the decedent complained to the Defendants' medical staffs about his chest pain in the subsequent medical encounters; but the Defendants' medical staff either knowingly not to or recklessly failed to document the decedent's complaint of his

chest pain to the medical records. Defendants admitted that "[i]n February and March of 2016, Mr. Requena helped Mr. Zhang sign up for sick call approximately 5-10 times." (A-3771, Dkt. 294, ¶ 37). As the material facts reveal that, "[i]n every single day Mr. Zhang was complaining about his chest pain." (A-3794, Dkt. 294, ¶ 84). "Mr. Zhang signed up for 10 times sick calls in [February and] March, 2016 complaining his chest pain, verbally saying 'pain' and point to his chest when he said 'pain'". (*Id.*, ¶ 86). "Mr. Zhang's fellow inmate told Officer Chen/Cheng/Chan that the Mr. Zhang's pain was within the heart, and like in between the heart and the arm." (*Id.,* ¶ 88). "Mr. Zhang would moan almost two or three times a week at night about 10 times in about 25 days." (*Id.,* ¶ 89). "When Mr. Zhang moaned at night, he would wake up his fellow inmate slept next to his bed." (*Id.,* ¶ 90). "One day in February, 2016, when Mr. Zhang felt chest pain and moaned at night, Mr. Zhang's fellow inmate, Juan Requena, asked Officer Porter [?] 'Can you send [Mr. Zhang] to the hospital?' Officer Porter replied, 'Yes, I will send him to the hospital'." (A-3795, Dkt. 294, ¶ 91). "Officer Porter did not send Mr. Zhang to a hospital after Mr. Zhang moaned at night due to his chest pain. [] Mr. Zhang came back and told his fellow inmate Juan Requena that 'Nothing' and showed Juan Requena with Aspirins and Ibuprofen in his hand." (*Id.,* ¶ 92). "Every time after he came back from the sick calls, Mr. Zhang would

25

complain to his fellow inmate, Juan Requena, that '[doctors] were really not giving him proper medical attention'." (*Id.,* ¶ 95).

It is undisputed material facts that the Defendants' ignorance of the decedent's serious medical needs, evidenced by the omissions of the CHS's medical records that failed to document the decedent's complaint of his chest pains after September 5, 2015, the failure of the Defendants' medical staffs to fully appreciate the decedent's medical history of the chest pains, and their failure to respond to the decedent's complaints of his chest pains, are causally related to the death of the decedent.

Plaintiffs, two decedent's sons, testified through their declarations that their father told them he felt chest pain and left shoulder pain in the weekly phone calls (A-3789, Dkt. 294, ¶ 54). During the weekly phone calls after January, 2016, the decedent told his sons that "he felt more and more painful in his chest and his left shoulder . . . . [and] told officers and doctors that he felt more and more painful in his chest". (*Id.* ¶ 55).

Had Defendants not intentionally destroyed the recordings of the decedent's telephone conversations with his family and friends, the factfinder could have found that the decedent "had told officers and doctors that he felt more and more painful in his chest" during the subsequent medical encounters.

Although the decedent's fellow inmate Juan Requena helped the decedent to sign up for the sick calls for chest pain on February 15, 2016, Dr. Nnaemezie Umeasor in Rikers documented the decedent's sick call for the left shoulder pain for more than 4 weeks, documented the decedent's past medical history of Hypertension; but failed to document the decedent's complaint of his chest pain. (A-3785-3786, -3794-3795, Dkt. 294, ¶¶ 36-37, 41, 86, 88, 91-92).

Although the decedent's fellow inmate Juan Requena helped the decedent to sign up for the sick calls for chest pain on February 22, 2016, the Defendants' medical staff, Dr. Jane Sanjose, ignored the decedent's sick call for chest pain; but instead documented "pain in [the decedent's] left hand". Furthermore, Dr. Sanjose admitted that she did not review the decedent's past medical history before she treated the decedent (A-4779-4783, Tr. 95:19-99:4); that she was not required to review the medical records of the patients when she treated the sick call patients (A-4784-4785, Tr. 100:10-101:6); and that the NYCHHC's CHS's medical policies or protocols did not require their medical staffs to review the inmates' past medical records when they saw sick call inmates. (A-4785-4787, Tr. 101:7-103:2).

Although the decedent's fellow inmate Juan Requena helped the decedent to sign up for the sick calls for chest pain on March 8, 2016, the Defendants' medical staff, Chika Nwogwugwu, PA., documented the decedent's complaint of on-and-off left shoulder pain diagnosed the decedent with mild degenerative disease of the

shoulder and bursitis/tendonitis.  (A-3785-3786, -3794-3795, Dkt. 294, ¶¶ 37, 41, 86, 88, 91-92).

In the instant case, Plaintiffs need only limited evidence on causation to avoid summary judgment in a §1983 deliberate indifference case.  *See Ortiz v. City of Chicago,* 656 F.3d 523, 534-35 (7th Cir. 2011).  Proximate cause is a question for the jury and summary judgment is appropriate on causation only in "rare cases."  *Id.* at 534.  Where a jury can infer from medical records and witness testimonies that defendants caused the inmate harm when they failed to treat him or her properly, with knowledge of a serious medical need, summary judgment is inappropriate.  *See id.* at 535.

**C.**   **The district court erred to find that "Plaintiffs evidence is principally offered in a collective manner and does not focus on the thoughts, words, or deeds of individual actors."  (A-5580, SPA-189, Dkt. 326 at 25).**

The district court's reliance in *DiStiso v. Cook,* 691 F.3d 225, 246 (2d Cir. 2012) is misplaced.  *DiStiso, supra,* about the "imputed knowledge" analysis is factually distinguishable from the instant case.  691 F.3d at 248.  In that case, there was no evidence to connect the racial name-calling to the later commonplace physical misbehavior to the former conduct so that the teacher could not have actual knowledge that the latter conduct is similarly motivated.  *Id.*

In the instant case, each and every medical staff knew and should have acquired actual knowledge of the decedent's sufficiently serious medical condition

– severe chest pains – exhibited symptoms consistent with an increased risk of a heart attack through reviewing the decedent's past medical history documented in the CHS medical records. The CHS medical records have connected each individual medical staff to a collective body of doctors with actual knowledge of the decedent's severe chest pains and coronary heart disease.

Therefore, Plaintiffs' allegations that "although the Defendants' medical providers or professional were aware of the decedent's risk factors for cardiac disease, they ultimately determined not to treat the decedents' severe chest pain, which led to the decedent's eventually death caused by the heart attack on April 8, 2016" are not offered in a collective manner; but actually focused on the thoughts, words, or deeds of each and every medical staffs of the Defendants.

Unfortunately, Defendants' medical staffs intentionally and recklessly failed to review the decedent's past medical history of severe chest pains before they saw the decedent after he made sick calls for severe chest pains, causing misdiagnosis the decedent's medical symptoms and unjustifiable delay in referring the decedent for stress test and follow up treatments, which might could have saved the decedent's life.

### D. The district court erred to overrule the Plaintiffs' objections to the CHS Medical Records as lacking validity and reliability.

Judge Castel erred to rule that "[i]n their opposition to summary judgment, plaintiffs for the first time argue that Zhang spoke the Wenzhou dialect of Chinese

and that no interpreter was available who spoke this dialect. . . . Any theory of liability on this basis fails because it has not been pleaded. (A-5559-5560, SPA-168-169, Dkt. 326, at 4-5). Plaintiffs, *however*, did not advance a new legal theory of liability when Plaintiffs object to the validity and reliability of the CHS medical records after Defendants attempted to use the medical records to prove that the decedent did not complain about his chest pains during subsequent medical encounters.

### E. Judge Castel erred to rely on the opinion of the Defendants expert witness, Dr. Stanley J. Schneller.

Without first addressing the Plaintiffs' motion *in limine* to preclude the Defendants' expert from testifying in the summary judgment and trial, Judge Castel relied upon the expert opinion that, "as the defendants' expert points out, angina or pain associated with a cardiac condition is transient, and Zhang reported that he had symptoms for two years thereby ruling them out as cardiac related." (A-5581, SPA-190).

In determining this summary judgment motion, the court must first determine the admissibility of the Defendants' proffered expert testimony. *See Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir. 1997). Where challenges to the admissibility of expert testimony are raised concurrently with a motion for summary judgment, "[t]he Court must first decide whether the opinions proffered by the parties' experts are admissible before proceeding with ruling on Defendants'

motion for summary judgment." *See, e.g., Bocoum v. Daimler Trucks North America LLC,* No. 17-CV-7636, 2022 WL 902465, at *5 (S.D.N.Y. March 28, 2022) (collecting cases).

Judge Castel cannot weigh the evidence in the motion for summary judgment and determine the truth of the matter but to determine whether there is a genuine issue for trial. *See Davis-Garett v. Urban Outfitters, Inc.,* 921 F.3d 30, 45 (2d Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

Therefore, the district court erred in granting the Defendants' motion for summary judgment to dismiss the Plaintiffs' *Monell* claims. (Castel, J.) (A-5556) (SPA-165) (Dkt. 326).

## POINT II

## DISTRICT COURT ERRED TO GRANT IN PART THE DEFENDANTS' RULE 12(b)(6) MOTION TO DISMISS THE PLAINTIFFS' COMPLAINT

On June 28, 2018, the district court granted in part the Defendants' Rule 12(b)(6) motion to dismiss the Plaintiffs' certain federal claims and state law claims. (A-220) (SPA-1).

Plaintiffs ask the Court to review the district court's underlying decision granting the Defendants' Rule 12(b)(6) motion to dismiss when reviewing the district court's decision denying the Plaintiffs' motion for leave to amend the Complaint and motion for reconsideration of the district court's decision denying

the Plaintiffs' motion for leave to amend the Complaint. The denial of reconsideration suffices to bring up for review the order granting motion to dismiss because the "intent to appeal [that order] can be fairly inferred." *"R" Best Produce v. Disapio,* 540 F.3d 115, 120 (2d Cir. 2008).

## I. PLAINTIFFS' FEDERAL CLAIMS UNDER FOURTEENTH AMENDMENT DUE PROCESS AS TO NYCCO DOES 1-10; MR. PONTE, DR. RAJU, MS. YANG, AND MR. WITTY SHOULD NOT BE DISMISSED

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (internal quotation marks omitted). "[A] 'plausible' claim contains 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 114 (2d Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). The *Iqbal-Twombly* standard, however, "does not impose a probability requirement at the pleading stage." *Mayor & City Council of Baltimore v. Citigroup, Inc.,* 709 F.3d 129, 135 (2d Cir. 2013).

### A. NYCCO Does 1-10

The Complaint and the proposed First Amended Complaint ("FAC") has plausibly well-pleaded factual allegations that Does 1-10 personally involved in the death of the decedent and exhibited deliberate indifference to his life-

threatening illness. (A-83-90, ¶¶ 70, 71, 73, 75, 82, 85, 87, 89, and 98-99; A-375-376, three added paragraphs between ¶ 67 and ¶ 68). *See Caiozzo v. Koreman,* 581 F.3d 63, 71, 72 (2d Cir. 2009); *Kelsey v. City of New York,* 306 F. App'x 700, 702 (2d Cir. 2009) ("An official may be found liable for violating a detainee's due process rights if the official was deliberately indifferent to the medical need of a detainee to be protected from himself.").

In the initial Complaint, Plaintiffs have alleged that NYCCO Does 1-10 intentionally deprived the decedent of medical care of his life threatening illness by ¶¶ 82, 87, 88, and 89. (A-86-87). Along with ¶¶ 70, 71, 73, and 75 in the initial Complaint, (A-83-84), the added allegations of three (3) factual paragraphs between ¶ 67 and ¶ 68, (A-375-376), have demonstrated that NYCCO Does 1-10 knew or should have known about the decedent's underlying medical condition; but failed to provide the decedent the must needed medical services, to wit: the decedent, assisted by inmates Zhuo H. Liu, DIN 15R2841, and Juan Requena, DIN 16R1599, reported to the NYCCO Does 1-10 that he felt chest pain, shoulder pain, and short breath, since he was detained until his death during his detention.

Judge Keenan on June 28, 2018 determined that "Plaintiffs have not met the "mens rea prong" as to NYCCO Does 1-10", (A-242) (SPA-23), and "again failed to satisfy the 'mens rea prong' for a § 1983 claim as to NYCCO Does 1-10." (A-463-464) (SPA-46-47).

Judge Keenan, *however*, ignored the Plaintiffs' complaint that NYCCO Does 1-10 made the decedent to wait for the medical attention and treatment that would pose an excessive risk to the health or safety to the decedent. (A-87, ¶ 89). The allegations in the Complaint referred by Judge Keenan actually support the findings that NYCCO Does 1-10 knew and should have known that the decedent had serious life threatening heart illness after the decedent complained to the NYCCO Does 1-10 that he had left shoulder pain for multiple times and for quite a long time. (A-463-464) (SPA-46-47). It is common sense that left shoulder pain is the heart attack symptoms that the decedent could not wait for medical attention and treatment.

Had the video surveillance recordings were preserved, the video surveillance recordings would have revealed that Mr. Zhang reported pain and suffering to correction officers during the night but was made to wait until morning for treatment. (A-815-817, Tr. 68:8-71:3). The added three paragraphs in the proposed FAC complain that "NYCCO Does 1-10 collectively did not help [the decedent] to get immediate attention of the medical treatments although NYCCO Does 1-10 collectively knew that denial of medical services posed an excessive risk to [the decedent's] health and safety." (A-375-376).

The decedent's fellow inmate Juan Requena testified that, the decedent would moan at night – "it was like steady . . . it was not really short period of

time". (A-1014, Tr. 29:7-16). When Requena heard the decedent moan at night, he asked him and the decedent "just kept saying 'pain' . . . and 'point on his chest' . . . it was tremendous pain, and you could see it on his face expression that he use to make . . .". (A-1014, Tr. 31:8-32:6.). Requena testified that, "maybe [ZHANG] just had to wait a little·like they always do, but you have to wait for·everything here." (A-1025, Tr. 75:11-13). Requena further testified that the correction officers were made aware of the decedent's chest pain in his testimony. (A-1014-1015, Tr. 31:8-34:10). In "the second day [Requena] met [Zhang] . . . he started complaining, and it was around 2 o'clock in the morning." (A-1014-1015, Tr. 13:15-22). Requena testified that he "told a relief officer. . . . And he said, 'Well, I will try to get him down there.' And then just time went by, and time went by and nothing happened." (A-1014-1015, Tr. 13:23-14:9). Requena testified that, "after like five or six, seven days, he was able to go to hospital". (A-1014-1015, Tr. 14:10-17). Requena testified that, he "asked Ms. Porter, 'Can you send him to the hospital?' And she says, 'Yes, I will send him to the hospital.' But she did [not]*sic* send him to the hospital, and he came back and told me, 'Nothing.'" (A-1014-1015, Tr. 14:18-22).

Hence, the allegations in the Complaint and the proposed FAC reveal that the complaint is sufficient to show that NYCCO Does 1-10 knew that the decedent had the serious medical risks of heart attack; but NYCCO Does 1-10 would make

the decedent to wait until the following morning for the acute medical attention and treatment. In this regard, NYCCO Does 1-10 exhibited deliberate indifference to the acute medical needs of the decedent's life threatening illness.

Although Judge Keenan did not believe the Plaintiffs' allegations, the district court should still not dismiss the Complaint. Even if the judge believes that recovery by the plaintiff is "improbable, . . . remote and unlikely," dismissal is inappropriate. *Twombly*, 550 U.S. at 556. If the allegations suggest liability, then the claim may not be dismissed. *Id.* at 557.

Therefore, with added allegations mentioned above, Plaintiffs have sufficiently cured the deficiencies with respect to the Fourteenth Amendment due process as to NYCCO Does 1-10.

### B. Mr. Ponte, Dr. Raju, Ms. Yang, and Mr. Witty

Arguments in the brief of the case 20-2757-cv, pages 39-45, are incorporated herein as the integral part of this appeal.

## II. PLAINTIFFS' STATE LAW CLAIMS AS TO THE SUPERVISOR LIABILITY, NEGLIGENT HIRING, TRAINING, OR SUPERVISION, SHOULD NOT BE DISMISSED

Judge Keenan dismissed the Plaintiffs' state law claims as to the supervisor liability, negligent hiring, training, or supervision on the sufficiency basis with respect to "the level of awareness of these employees' propensities that the second prong of a negligent supervision claim requires". (A-254) (SPA-35). The

sufficiency issue turns on who is in the better position to have such information. Apparently, Defendants should have all such relevant information relating to the inquiry whether "the [defendant] employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence". *Green v. City of Mount Vernan,* 96 F. Supp. 3d 263, 297 (S.D.N.Y. 2015) (quoting *Ehrens v. Lutheran Church,* 385 F.3d 232, 235 (2d Cir. 2004)).

Defendants, however, have repeatedly moved the district court to stay the *Monell* discovery to prevent Plaintiffs from obtaining such "propensity" evidence. (A-842-850; 851-854). *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690-91 (1978). Defendants have unilaterally decided to withhold the *Monell* discovery despite the district court's order directing them to participate in the *Monell* discovery. (A-816, Tr. 54:16-18; A-916).

When Defendants unilaterally withheld the *Monell* discovery to prevent the Plaintiffs from obtaining the "propensity" evidence, the district court should not hold Plaintiffs to the high standard of pleading of sufficiency. In the instant case, Plaintiffs could only rely on the public available information to allege that defendants supervisors knew or should have known of their employees' propensity to engage in the conduct that violated the decedent's constitutional rights. (A-73, -93, -99, -100-104, ¶¶ 14, 113-133, 138-142, 145, 147, 149, and 151-57). Defendants supervisors and wardens have been put on notice of such palpably

systematic deficiencies of health, medical care and attention provided to the inmates in the custody of Rikers Island at least since August 17, 2012 when their colleague Captain Pendergrass was convicted in December 2015 of violating inmate Echevarria's civil rights under the due process clause of the 14th Amendment. *Matter of Castro,* 140 A.D.3d at 644-47; (A-95-99, ¶¶ 119-32). Under the same analysis in the Mr. Ponte's case, "storm warnings" brought up by the indictment and conviction of their colleague Captain Pendergrass in the Rikers Island facility were sufficient to trigger defendants supervisors and wardens' duties to investigate and change the policies concerning the care, custody, and control of the inmate in the detention facilities. *Staehr,* 547 F.3d at 432. Hence, Plaintiffs' claims as to supervisors and wardens appear to satisfy all of the *Colon* categories and at least certain claims also appear to satisfy an *Iqbal*-limiting standard. *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995).

## POINT III

## THE DISTRICT COURT ABUSED THEIR DISCRETION IN DENYING THE PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS

Without conducting his own analysis, Judge Keenan concluded that "the findings, reasoning, and legal support for Magistrate Judge Wang's denial of Plaintiffs' motion for sanctions are not clearly erroneous or contrary to law and are thus warranted" and "adopt[ed] the Magistrate Judge Wang's Oral Order of October 29, 2019, and her written orders dated August 20, 2019, and August 17, 2020, in their entirety." (A-1825) (SPA-150). Judge Keenan further adopted the Magistrate Judge Wang's conclusion that "[i]t would be manifestly unjust to require Defendants to reimburse Plaintiffs' counsel for causing years of litigation over video and audio recordings that were destroyed in the normal course, where Plaintiffs failed to give sufficient and reasonable notice to Defendants at any time before the [e]lectronically stored information] was destroyed." (A-1822) (SPA-147). In this regard, Judge Keenan's findings of fact and conclusions of law are based on an erroneous determination of law.

First of all, Magistrate Judge Wang's August 17, 2020 Memorandum Opinion & Order (SPA-128-140) (A-1745-1757) is clearly erroneous and contrary to law because the district court did not have jurisdiction to review the Defendants' Local Civil Rule 6.3 motion for reconsideration since the motion was untimely. (A-1238-1263, -1272-1362) (SPA-66-88). The Magistrate Judge Wang's

39

August 17, 2020 Memorandum Opinion & Order (A-1745-1757) (SPA-128-140) also is improper under the explicit terms of Rule 60(b) since the reconsidered August 20, 2019 Opinion & Order (A-1238-1260) (SPA-66-88) is not the final order or judgment.

Secondly, Magistrate Judge Wang's Oral Order of October 29, 2019 ruling that "the filing of a notice of claim does not require the City to preserve all surveillance videos for the whole 90-day period" is clearly erroneous and contrary to law. (A-1380, Tr. 13:22-24) (SPA-101).

Thirdly, Magistrate Judge Wang's August 20, 2019 Opinion & Order denying the Plaintiffs' motion for spoliation sanctions under Rule 37(e)(2) for the loss of the video surveillance recordings and telephone recordings is clearly erroneous and contrary to law. (A-1253-1258) (SPA-81-86).

Lastly, Magistrate Judge Wang erred to act as an advocate for Defendants, not as an impartial adjudicator. (A-1755-1756; A-916, ¶ 2) (SPA-138-139).

Second Circuit reviews a district court's denial of a motion for spoliation sanctions for abuse of discretion. *See Allstate Ins. Co. v. Hamilton Beach/Proctor Silex, Inc.,* 473 F.3d 450, 456 (2d Cir. 2007); *West v. Goodyear Tire Rubber Co.,* 167 F.3d 776, 779 (2d Cir.1999). Second Circuit will accept the district court's factual findings in denying the sanctions unless they are clearly erroneous. *West,* 167 F.3d at 779.

A district court necessarily abuses its discretion if its conclusions are based on an erroneous determination of law or on clearly erroneous factual findings. *See Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990).

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *West,* 167 F.3d at 779. "The obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation or when a party should have known that the evidence may be relevant to future litigation." *Fujitsu Ltd. v. Fed. Express Corp.,* 247 F.3d 423, 436 (2d Cir.), *cert. denied,* 534 U.S. 891, 122 S.Ct. 206, 151 L.Ed.2d 146 (2001).

## I. MAGISTRATE JUDGE WANG'S OCTOBER 29, 2019 ORAL ORDER (A-1380) AND AUGUST 17, 2020 OPINION & ORDER (A-1745-1757) ARE CLEARLY ERRONEOUS AND CONTRARY TO LAW

### A. The District Court's Conclusions that Defendants Had no Duty to Preserve the Evidence are Based on an Erroneous Determination of Law and Clearly Erroneous Factual Findings.

Magistrate Judge Wang's conclusions that the Notice of Claim served upon the Defendants in the instant case did not give rise to a duty to preserve video surveillance recordings and telephone recordings that were destroyed in the normal course because "Plaintiffs failed to give sufficient and reasonable notice to Defendants at any time before the ESI was destroyed" (A-1756) (SPA-139)

41

(A-1380, Tr. 13:22-24) are based on an erroneous determination of law and on clearly erroneous factual findings.

The October 29, 2019 status conference was not set for a hearing to argue the Defendants' motion for reconsideration of the Magistrate Judge Wang's August 20, 2019 Opinion & Order. (A-1387, Tr. 20:15-16). Plaintiffs' counsel was not informed to prepare for the oral argument. (A-1387, Tr. 20:13-14). Discussions in the status conference about the Defendants' motion for reconsideration should not be used to support the Magistrate Judge Wang's August 17, 2020 Order. (*but see* A-1745-1757) (SPA-128).

       1.    Magistrate Judge Wang Exaggerated the Number of Staff Hours Needed to Preserve Relevant Surveillance Video Recordings

The Magistrate Judge Wang's conclusion that "Plaintiffs asserted that all 4.5 million hours of video surveillance in the 90 days preceding Mr. Zhang's death should have been preserved" is really taking content out of the context of the statements made by Plaintiffs' counsel in the status conference and Plaintiffs' court filings in connection with discovery and preservation issues. (A-1387-1389, Tr. 20:11-22:11) (SPA-108-110). The Magistrate Judge Wang's calculation of 4.5 million hours of video surveillance recordings is also contrary to her own ruling in the status conference on October 29, 2019 and contrary to the data provided by Brian K. Charkowick in his Affidavit submitted to support the Defendants' motion for reconsideration. (A-1392, Tr. 25:2-11) (A-1298-1301) (SPA-113; Tr. 25:2-11).

The Magistrate Judge Wang conducted faulty analysis to reach 4.5 million hours to review the video surveillance recordings when Charkowick testified that "it would take approximately **15 staff hours** to stop and export the video in just the area where Mr. Zhang slept at RNDC." (A-1299, ¶¶ 1-2, 9). It is a sharp contrast to the Magistrate Judge Wang's **4.5 million hours** calculation.

The difference between "4.5 million hours of video surveillance recordings" and "approximately 15 staff hours stop and export the video from only nine cameras" mentioned foregoing is caused by the element of "relevance". Most of the 4.5 million hours calculated by Magistrate Judge Wang were not relevant to the decedent. In the Plaintiffs' prior filings of the motion for spoliation sanctions, Plaintiffs complained that Defendants destroyed the evidence of the video surveillance recordings and telephone recordings that were relevant to the decedent; but not the erroneous **4.5 million hours**. (A-954-1065, -1226-1237).

2.  Magistrate Judge Wang Failed to Conduct her "Proportionality" Analyses with respect to "Duty to Preserve" ESI at Issue

(a)  Video Surveillance Recordings

During the October 29, 2019 status conference, Magistrate Judge Wang stated that "specifically, in terms of notice of claim, what would be helpful is how many other claims against the Department of Corrections involve somebody who died in custody and whether the time limitation in the notice of claim – in this case, you know, he had an ongoing health condition that was known to the defendants at

the time that he went into custody; and whether the language, particularly in the last four months, would have given rise to any notice or duty on the part of the defendants to consider whether there was video that should have been preserved other than from the date and time of death." (A-1391-1392, Tr. 24:16-25:1) (A-1398, Tr. 31:13-18).

Defendants failed to provide the information as directed by the court and only vaguely provided that "in calendar year 2016 there were 15 [inmate] deaths". (A-1421). Even so, Magistrate Judge Wang failed to conduct her "proportionality" analyses according to the number of "claims against the Department of Corrections involve somebody who died in custody". (*Id.*).

(b)   <u>Telephone Recordings</u>

With respect to telephone recordings, in their supplemental briefing, Defendants failed to submit any additional evidence to support their claim that Defendants did not have any duty to preserve the telephone recordings at issue. (A-1410-1439).

Magistrate Judge Wang did not make any "proportionality" analysis with respect to the duty to preserve the telephone recordings in her August 17, 2020 Memorandum Opinion & Order. (A-1751-1756) (SPA-128). Magistrate Judge Wang only made conclusive statement that "Plaintiffs' counsel may not have pressed the preservation and review of ESI (and in particular, the telephone and

video recordings at issue in the sanction motion) until it became evident that Defendants had not preserved them". (A-1755, n. 9) (SPA-138, n. 9). In this regard, Magistrate Judge Wang's conclusion made on August 17, 2020 with respect to telephone recordings is purely speculative, not supported by any substantial evidence in record, and in addition contrary to law. (A-1257, -1751-1756) (SPA-138).

### B. Defendants Have the Duty to Preserve the Video Surveillance Recordings and the Telephone Recordings.

#### 1. Defendants' Obligations to Preserve Evidence were Triggered upon the Death of the Decedent

The death of the decedent certainly triggered the Defendants' obligations to preserve evidence. Courts have held that "[o]nce a party reasonably anticipates litigation, it must suspend its routine document retention/destruction policy and put in place a 'litigation hold'" to preserve evidence. *Zubulake v. UBS Warburg LLC,* 220 F.R.D. 212, 218 (S.D.N.Y. 2003) ("*Zubulake IV*"). The usefulness of the *Zubulake IV* standard in the e-discovery arena, is, as the *VOOM* Court observed, that it "provides litigants with sufficient certainty as to the nature of their obligations in the electronic discovery context and when those obligations are triggered." *VOOM HD Holdings LLC v. EchoStar Satellite L.L.C.*, 93 A.D.3d 33, 36, 939 N.Y.S.2d 321 [1st Dep't. 2012]; *see also, Strong v. City of New York,* 112 A.D.3d 15, 23, 973 N.Y.S.2d 152 [1st Dep't. 2013].

Therefore, the video surveillance recordings should have been preserved for 90 days back to January 19, 2016 and could have preserved for the entire year's worth if any backup tapes were in place. Actually, Defendants did have "an external hard drive" to "accomplish the preservation/retention of that video" as admitted by the Charkowick's Affidavit. (A-1299, ¶ 8).

Likewise, all phone recordings between the decedent and his family and friends when he was in the custody of the Department of Correction from April 18, 2015 to April 18, 2016 should have been preserved upon the death of the decedent.

2.      Defendants' Obligations to Preserve Evidence were at Least <u>Triggered by the Notice of Claims Served upon the Defendants</u>

Plaintiffs timely served the "Personal Injury Claim Form" on The City of New York, The New York City Department of Correction, Rikers Island Facilities, Bill De Blasio, and Joseph Ponte on April 26, 2016 with all the pertinent information. (A-502-507). Plaintiffs supplemented the "Personal Injury Claim Form" on the above mentioned defendants on July 15, 2016, claiming that "[t]he officials of the New York City and the New York City Department of Correction deprived Mr. Zhi Quan Zhang's civil rights under 42 U.S. Code § 1983". (A-508-513).

Plaintiffs timely served the "Personal Injury Claim Form" on NYCHHC. Corizon Health Inc., Ram Raju, and Patsy Yang on July 15, 2016 with all the pertinent information. (A-523-531).

On August 20, 2019, Magistrate Judge Wang concluded that, "[a]t the latest, and for purposes of this motion only, Defendants' duty to preserve arose on or before April 26, 2016, when Plaintiffs filed their Personal Injury Claim Forms, providing explicit notice of a forthcoming wrongful death and medical malpractice lawsuit. . . .  No later than this time, Defendants should have implemented a litigation hold."  (A-1249-1250) (SPA-77-78).  On August 17, 2020, Magistrate Judge Wang, *however*, erroneously reversed her position and held that the Notice of Claim filed in the instant case did not trigger the Defendants' duty to preserve, out of the public policy concern and "proportionality" analysis.  (A-1751-1754) (SPA-134-137).

First of all, Magistrate Judge Wang's conclusion that no duty to preserve arising from the Notice of Claim under Section 50-e is contrary to law.  "The only legitimate purpose served by the notice" is prompt investigation and preservation of evidence of the facts and circumstances out of which claims arise.  *Beary v. City of Rye,* 44 N.Y.2d 398, 412, 377 N.E.2d 453, 458, 406 N.Y.S.2d 9, 13 [N.Y. Ct. of Appeals, 1978].  Furthermore, "[t]he purpose of the statutory notice of claim requirement is to afford the public corporation an adequate opportunity to investigate the circumstances surrounding the accident and to explore the merits of the claim while information is still readily available."  *Bowers v. City of New York,* 147 A.D.3d 894, 895 [2d Dep't. 2017].

47

Secondly, Magistrate Judge Wang's holding that no duty to preserve arising from the Notice of Claim contradicts the Federal Rules because the "extremely broad discovery permitted by the Federal Rules . . . functions . . . [when] we can rely on each side to preserve evidence and to disclose relevant information when asked (and sometimes even before then) without being forced to proceed at the point of a court order." *Klipsch Grp., Inc. v. ePRO E-Commerce Ltd.,* 880 F.3d 620, 631 (2d Cir. 2018).

Therefore, the relevant video surveillance recordings and telephone recordings should have been preserved. *See generally, Zubulake v. UBS Warburg LLC,* 229 F.R.D. 422, 425 (S.D.N.Y. 2004) ("*Zubulake V*").

3.  Telephone Recordings Should Have been Preserved

After obtaining notice of the litigation, a party "'must suspend its routine document retention/destruction policy and put in place a 'litigation hold' to ensure the preservation of relevant documents.'" *Pension Comm. of the Univ. of Montreal Pension Plan v. Banc of Am. Secs, LLC*, 2010 WL 184312, at *4 (S.D.N.Y. 2010) (quoting *Treppel v. Biovail Corp.,* 249 F.R.D. 111, 118 (S.D.N.Y. 2008)); *see also Toussie v. County of Suffolk,* No. 01 Civ. 6716, 2007 WL 4565160, at *7 (E.D.N.Y. Dec. 21, 2007) ("[O]nce the duty to preserve attaches, at a minimum, a litigant is expected to 'suspend its routine document and retention/destruction

policy and to put in place a litigation hold.'") (quoting *Zubulake IV,* 220 F.R.D. at 218.

Plaintiffs commenced the instant action on July 17, 2017. (A-68-117). Defendants The City of New York, New York City Department of Correction, and Rikers Island Facilities were served the Summons and Complaint on July 31, 2017. (A-25). To the least, from the point of July 31, 2017 counting back for 18 months, all telephone recordings at issue from January 18, 2015 to April 18, 2016 (A-914, ¶ 9; A-1257-1258) should still be in existence and under the Defendants' control, *even if* Defendants had retention policy to destroy these telephone recordings after 18 months.

### 4. Burden of Implementing Litigation Holds to Preserve Evidence Does not Shift to Plaintiffs in the Instant Case

The district court made the clearly erroneous conclusion that "Plaintiffs failed to give sufficient and reasonable notice to Defendants at any time before the [e]lectronically stored information] was destroyed." (A-1755, n. 9; -1822) (SPA-138, n. 9; -147). This conclusion is contrary to law for shifting the burden of perseverance of evidence to Plaintiffs. As this Court has explained, "[t]he extremely broad discovery permitted by the Federal Rules depends on the parties' voluntary participation. The system functions because, in the vast majority of cases, we can rely on each side to preserve evidence and to disclose relevant information when asked (and sometimes even before then) without being forced to

proceed at the point of a court order." *Klipsch Grp.*, 880 F.3d at 631. This, unfortunately, is not one of those cases.

None of the legal precedents supports the district court's findings of fact and conclusions of law to shift burden of preservation of evidence to Plaintiffs. On the contrary, the burden of exercising due diligence to implement litigation holds to preserve evidence is squarely on the Defendants and their counsels. *See Zubulake V,* 229 F.R.D. at 432; *Passlogix,* 708 F. Supp. 2d at 409; *Turner,* 142 F.R.D. at 72-73. It was the failure of the defense counsels to exercise their due diligence to advise Defendants to preserve these relevant ESI evidence. *See Zubulake V,* 229 F.R.D. at 436.

"The requirement to issue a written litigation hold notice has been in place in this District since the *Zubulake V* decision in July 2004." *Passlogix,* 708 F. Supp. 2d at 410; *see Pension,* 2010 WL 184312, at *10 (stating that the requirement to implement litigation holds "was clearly established in this District by mid[-]2004"). Therefore, it is the Defendants and their counsels' duty to exercise due diligence, ***not the Plaintiffs or their counsels,*** to implement litigation holds in order to preserve evidence. In this regard, the burden to exercise due diligence to implement litigation holds does not shift to Plaintiffs or their counsel.

## II. MAGISTRATE JUDGE WANG ABUSED HER DISCRETION IN HER AUGUST 17, 2020 OPINION & ORDER DENYING PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS

### A. Magistrate Judge Wang Abused her Discretion, Misplaced the Law and Failed to Deny the Defendants' Local Rule 6.3 Motion as Untimely.

On September 6, 2019, Defendants' made motion for reconsideration of the Magistrate Judge Wang's August 20, 2019 Opinion & Order (A-1745-1757) (SPA-66) under Local Civil Rule 6.3, more than 3 days late. (A-1745-1757). Since Local Civil Rule 6.3 motion is jurisdictional, the lower court could not extend the Defendants' time limit to file a Local Civil Rule 6.3 motion, not even for excusable neglect. Fed. R. Civ. P. 60(b)(2); *see Williams v. Justices of NYS Sup. Ct. App. Div. 1st Dep't,* 19-cv-2476 (CM) (S.D.N.Y. Jan. 17, 2020) (citing *Lichtenberg v. Besicorp Group Inc.,* 204 F.3d 397, 401 (2d Cir. 2000)).

### B. Magistrate Judge Wang Abused her Discretion, Misplaced the Law, and Procedural Improperly in Rendering Her August 17, 2020 Memorandum Opinion & Order Under Rule 60(b)(6).

Magistrate Judge Wang's August 20, 2019 Opinion & Order (A-1238-1260) (SPA-66) is not a final order. (A-1253-1258). "District Court's order imposing discovery sanctions against [Defendants] under Rule 37 is an interlocutory order". *Linde v. Arab Bank, PLC,* 706 F.3d 92, 120 (2d Cir. 2013). Rule 60(b) provides no basis for the Defendants to seek relief of the district court's August 20, 2019

51

Opinion & Order, (A-1238-1260). *See Grand River Enters. Six Nations,* 2009 WL 1739893, at *2 n.1.

### C. Magistrate Judge Wang's August 17, 2020 Memorandum Opinion & Order (A-1745-1757) is an Abusing of her Discretion and Clearly Erroneous as a Matter of Substance

Even if the Defendants' motion for reconsideration under Rule 60(b) was properly before the district court, the motion would still fail on the merits. The Second Circuit has long-held that Rule 60(b) is "extraordinary judicial relief" that can only be granted "upon a showing of exceptional circumstances" and "relief under the rule is discretionary." *Motorola Credit Corp. v. Uzan,* 561 F.3d 123, 126 (2d Cir. 2009). The reconsideration standard "is strict," and reconsideration is generally only granted upon a showing of "controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.,* 70 F.3d 255, 257 (2d Cir. 1995). The "moving party bears the burden of proof." *Freedom, N.Y., Inc. v. United States,* 438 F. Supp. 2d 457, 462 (S.D.N.Y. 2006).

Defendants' arguments based on policy issues are new; but not previously presented to the district court. As acknowledged by Magistrate Judge Wang, Defendants raised for the first time "policy issues related to the duty to preserve and related to proportionality in the context of a motion for reconsideration". (A-1746) (SPA-129) (*see also* A-1274-1275). A motion for reconsideration is not "an

occasion for . . . an opportunity for making new arguments that could have been previously advanced." *Associated Press v. U.S. Dep't of Def.,* 395 F. Supp. 2d 17, 19 (S.D.N.Y. 2005). It is not a way to "advance new facts, issues or arguments not previously presented to the Court." *Polsby v. St. Martin's Press, Inc.,* No. 97 Civ. 960 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan. 18, 2000) (internal citation omitted). Therefore, the Defendants' motion for reconsideration shall be denied in its entirety.

Defendants' "additional information and data" is not "newly discovered evidence" under rule 60(b)(2). Defendants for the first time submitted "additional information and data" in the form of an Affidavit by Brian Charkowick, (A-1299-1230), and the Comptroller's Annual Claims Report, which includes statistics and data from Fiscal Year 2018." (A-1303-1362). Actually, Magistrate Judge Wang found that evidence submitted by defense counsels to support their policy or proportionality arguments in their supplemental briefings were available to Defendants when defense counsels opposed the Plaintiffs' motion for sanctions for spoliation of evidence in the first place. (A-1370, Tr. 3:20-22). In this regard, Rule 60(b)(2) governs the Defendants' motion for reconsideration.

Defendants failed to offer any evidence to support a finding of "due diligence". "Without demonstrating its due diligence, [a movant] cannot meet the standards for a Rule 60(b)(2) motion." *Lykes Pasco, Inc. v. Ahava Dairy Prods.*

53

*Corp.,* No. CV-97-0652, 1998 WL 427570, at *3 (E.D.N.Y. Jan. 26, 1998); *Boule v. Hutton,* 170 F. Supp. 2d 441, 445 (S.D.N.Y. 2001).

Magistrate Judge Wang abused her discretion in considering the Defendants' "additional information and data" in the form of the Comptroller's Annual Claims Report. *See Schwartz v. Capital Liquidators, Inc.,* 984 F.2d 53, 54 (2d Cir. 1993).

1. There are No "Extraordinary Circumstances"
<u>Justifying Relief Under Rule 60(b)(6)</u>

Rule 60(b)(6) allows a court to "relieve a party . . . from a final judgment, order, or proceeding" for any "reason that justifies relief." Fed. R. Civ. Proc. 60(b)(6); *see also Stevens v. Miller,* 676 F.3d 62, 67 (2d Cir. 2012). Relief under Rule 60(b)(6), however, "requires a showing of extraordinary circumstances." *Gonzalez v. Crosby,* 545 U.S. 524, 535, 125 S. Ct. 2641, 162 L. Ed. 2d 480 (2005); *see also Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 863, 108 S. Ct. 2194, 100 L. Ed. 2d 855 (1988). Here, Defendants only inaccurately contended that Magistrate Judge Wang "overlooked 'controlling decisions or data'" in deciding the issue of Rule 37 sanctions on the Defendants' spoliation of evidence and awarding the Plaintiffs their attorneys' fees and costs. (A-1276). Therefore, Defendants failed to demonstrate extraordinary circumstances in their motion papers. *See Mpala v. Gateway Cmty. Coll.,* 717 F. App'x 96, 97 (2d Cir. 2018) (holding that where the movant asserts that the District Court decided an issue incorrectly, it does not constitute "extraordinary circumstances.")

54

(a) "Manifestly Unjust" Does not Constitute "Extraordinary
Circumstances" Justifying Relief Under Rule 60(b)(6)

Magistrate Judge Wang endeavored to grant the Defendants' motion for
reconsideration on the "manifestly unjust" ground. (A-1756) (SPA-139).
"Manifestly Unjust", however, is not an enumerated ground recognized under Rule
60(b)(6) relief. *See e.g., Colucci v. Beth Israel Med. Ctr.,* 531 F. App'x 118, 4 (2d.
Cir. 2013).

(b) Counsels' Negligence Does not Constitute "Extraordinary
Circumstances" Justifying Relief Under Rule 60(b)(6)

Magistrate Judge Wang discussed defense counsels' mistakes made during
the litigation of the Plaintiffs' motion for spoliation sanctions. (A-1753-1755)
(SPA-136-138). Although the defense counsels were gross negligent, the gross
negligence of the defense counsels, *however,* is not a basis for relief under Rule
60(b)(6)). *See Alvarado v. Manhattan Worker Career Ctr.,* No. 01 Civ. 9288,
2003 WL 22462032, at *3 (S.D.N.Y. Oct. 30, 2003) (citing *United States v.
Cirami,* 563 F.2d 26, 30 (2d Cir. 1977).

## III. MAGISTRATE JUDGE WANG ABUSED HER DISCRETION IN HER AUGUST 20, 2019 OPINION & ORDER DENYING PLAINTIFFS' MOTION FOR SPOLIATION SANCTIONS UNDER RULE 37(e)(2).

Magistrate Judge Wang made clearly erroneous conclusion that "the
circumstances surrounding Defendants' loss of ESI do not support an inference

that Defendants acted with the intent to deprive Plaintiff of evidence." (A-1254) (SPA-82).

**A.** **The Conduct that Defense Counsels Expressed no Remorse to the Destroyed ESI at Issue Caused by their Intentional Nonfeasance Reveals that Defendants Acted with the Intent to Deprive <u>Plaintiffs of Evidence under the Totality of Circumstances.</u>**

After the loss of the ESI at issue, defense counsels have never expressed remorse to their intentional nonfeasance to preserve the evidence. On the contrary, defense counsels accused the Plaintiffs' counsel for failure to request to preserve the destroyed evidence of the video surveillance recordings and telephone recordings.

The defense counsel accused the Plaintiffs' counsel in the open court that:

> "I'am *flabbergasted*. Your Honor asked Mr. Yan, pointblank, if his position was that the notice of claim, filed in April 2016, created a duty of preservation for all video surveillance. And Mr. Yan's answer today is yes. And I can't think of a polite way to say it other than that's so *disingenuous*, . . . . It's incomprehensible to me and it's *offensive* that now, three years later, Mr. Yan, in open court, having written the letter, a preservation letter, can sit here and say that his expectation was that the notice of claim created a preservation for all surveillance. *I'm honestly - - I'm in disbelief*."

(A-1388-1389, Tr. 21:18-22:11) (A-1756, n. 10).

In their Rule 26 Initial Disclosure, defense counsels unilaterally withheld the identities of Investigator Malik Aziz and Investigator Yu as the individuals likely to have discoverable information. (A-532-535; at 3, ¶ i). Investigator Yu are the

individuals likely to have discoverable information since "Investigator Malik Aziz, shield 5015, listened to inmate Zhang's telephone calls, of which there were "approximately 45 that were made since January 1, 2016, with the last being made on March 30, 2016, utilizing his pin number." (A-975-976). Subsequently, defense counsels have never supplemented their Rule 26 disclosure.

It has to be noted that defense counsels did not produce the Callout Report and Checklist containing the information about telephone calls and Investigators Malik Aziz and Yu until sometime in May, 2018. (A-975-976).

No matter whether Plaintiffs' preservation letters were clear or not, "[t]his obligation to preserve relevant evidence exists whether or not the evidence has been specifically requested in a demand for discovery." *Scalera v. Electrograph Systems, Inc.,* 262 F.R.D. 162, 171 (E.D.N.Y. 2009); *see also Barsoum v. N.Y.C. Hous. Auth.,* 202 F.R.D. 396, 400 (S.D.N.Y. 2001). Therefore, it is the defense counsels' obligations to preserve relevant evidence, not the Plaintiffs' counsel, or even to blame the Plaintiffs counsel's preservation letters not detailed enough.

### B.    It is not just the Gross Negligence; but the Defense Counsels' Intentional Acts to Deprive Plaintiffs of the ESI at Issue.

1.    As Exceptionally Experienced Litigation Attorneys, Defense Counsels Ordinarily will not Neglect their Due Diligence Not to Implement Litigation Holds.

Defense counsels, with over 100 exceptionally experienced litigation attorneys in their firm, are very well aware of their duty to exercise due diligence

to have their clients to implement litigation hold to preserve relevant evidence. *See* <https://www.hpmb.com/the-firm/> (last visited July 12, 2021). Defense counsels mysteriously, *however*, have never had Defendants implement any litigation holds or taken *any steps* to preserve the video surveillance recordings and telephone recordings prior to their destruction in this lawsuit. (A-1254) (SPA-82). Before admitting that Defendants had destroyed the ESI at issue, defense counsels represented to the Court "that Defendants were 'not in possession of any documents responsive to this request'" with respect to "video surveillance footage and telephone recordings" while made "their decision not to investigate whether certain responsive documents exist". (A-936, -1241) (SPA-69), (A-814-816, Tr. 50:8-25; 51:1-4; 53-54). Defense counsels and Defendants even misled the Court that their "search revealed there are no recordings of telephone calls made by inmate Zhiquan Zhang from April 18, 2015 to April 18, 2016". (A-1001, ¶¶ 5-6.). This sworn statement is contradictory to the reports of Investigator Malik Aziz, shield 5015, and Investigator Yu that there existed approximately 45 telephone calls made from January 1, 2016 to March 30, 2016 between the decedent Zhiquan Zhang and his family members and friends. (A-981-982).

2. Not to Implement Litigation Holds is the Defense Counsels'
   <u>Calculated Tactics to Litigate the Instant Case.</u>

During the discovery conference on May 1, 2018, defense counsels represented to the Court that "I can tell you that my interpretation of the judge's

58

instructions were that the discovery that [Plaintiffs] was entitled to was the discovery that we made requests to our clients of." (A-808, Tr. 54:16-18). By the defense counsels' calculated "interpretation", Defendants let the ESI at issue destroyed. After the loss of the ESI at issue, defense counsels represented to the Court "that Defendants were 'not in possession of any documents responsive to this request'" with respect to "video surveillance footage and telephone recordings". (A-814-816, Tr. 50:8-25; 51:1-4; 53-54) (A-916). This is the intentional act, not just gross negligence or reckless, to destroy the ESI at issue.

"The logical inferences that can be drawn from these facts are that [Defendants]: (a) intentionally deleted the [evidence]; (b) intentionally did not take any steps to preserve [the evidence]; or (c) still has those [evidence] in [their] possession but [have] failed to produce them. Any of these scenarios satisfies the requisite level of intent required by Federal Rule of Civil Procedure 37(e)." *Ottoson v. SMBC Leasing and Finance, Inc.,* 268 F. Supp. 3d 570, 582-83 (S.D.N.Y. 2017) (quoting *Arrowhead Capital Fin., Ltd. v. Seven Arts Ent't, Inc.,* No. 14-cv-6512, 2016 WL 4991623, at *20 (S.D.N.Y. Sept. 16, 2016).

Magistrate Judge Wang's findings of no bad faith also contradicts her own concerns that "[t]he Court notes its concerns with Defendants' compliance with its discovery obligations with respect to *Monell* discovery, including: . . . 2) their ***unilateral decision not to investigate*** whether responsive documents relevant to

59

these, and to other claims, exist, while at the same time representing that 'Defendant]s [are] not in possession' of these documents. . . . This conduct wasted Plaintiffs' time and judicial resources on discovery disputes, and may result in the loss of discovery material relevant to Plaintiffs' claims."  (A-916-917, ¶ 2) (emphasis added).

Although a party's destruction of documents not always will fit neatly into categories of willful, culpability runs "along a continuum of fault—ranging from innocence through the degrees of negligence to intentionality." *See e.g., Shaffer v. RWP Group, Inc.,* 169 F.R.D. 19 (E.D.N.Y. 1996) (quoting *Welsh v. United States,* 844 F.2d 1239, 1246 (6th Cir. 1988)).  In the instant case, the loss of the video surveillance recordings and telephone recordings was beyond the result of mere negligence.  In *Cruz v. G-Star Inc.,* No. 17-cv-7685, 2019 WL 2521299, at *14 (S.D.N.Y. Jun. 19, 2019) (MJ. Wang).  It is the Defendants and their counsels' unilateral decision not to investigate whether responsive documents relevant to the claims exist, while at the same time representing that Defendants are not in possession of these documents that cause the loss of the ESI at issue.  The defense counsels' conduct was intentional and "the intention was to manipulate the . . . information specifically for purposes of this litigation," which met the "prerequisite for assessing sanctions under subsection (e)(2)".  *CAT3, LLC v. Black Lineage, Inc.,* 164 F. Supp. 3d 488, 501 (S.D.N.Y. 2016).

Because "the conduct of an attorney is imputed to his client," defense counsels' "actions present sufficient circumstantial evidence from which to infer that [Defendants] intended to deprive Plaintiff of the relevant ESI for use in litigation." *McNulty,* 137 F.3d at 739 (internal quotation mark omitted). Therefore, Defendants acted with the intent to deprive Plaintiffs of evidence under the totality of circumstances.

3. Exercise Due Diligent Duty to Preserve the ESI at Issue in on the Defense Counsels, not on the Plaintiffs' Counsel.

Magistrate Judge Wang erred to put the duty to preserve the ESI at issue on the Plaintiffs, saying that "the April Notice of Claim makes no mention of ESI, videos or any particular type of evidence". (A-1752) (SPA-135). Even so, Magistrate Judge Wang failed to recognize the "wrongful death" claim in the April Notice of Claim, (A-503), and 42 U.S.C. § 1983 civil rights claim in the July 15, 2016 Notice of Claim. (A-510). Such duty is on the Defendants and their counsels. *Zubulake V*, 229 F.R.D. at 436.

**C. Plaintiffs' Counsel did not Cause Years Delay.**

Magistrate Judge Wang's erroneous findings that "Plaintiffs' counsel [] caus[ed] years of litigation over video and audio recordings that were destroyed in the normal course" are contrary to the substantial evidence in record. (A-1756) (SPA-139). In fact, Defendants and their counsels resorted to dilatory tactics

trying to derail the Plaintiffs' reasonable and necessary discovery. (A-68-136, -502-781).

## POINT IV

### THE DISTRICT COURT ABUSED HIS DISCRETION IN DENYING THE PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT, SUBSTITUTING NAMED DEFENDANTS FOR THE DOE DEFENDANTS

Plaintiffs in the instant matter have done more than what required to satisfy the due diligence standard to substitute named defendants for the Doe defendants. Rule 15(c)(1)(A); *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); NYS CPLR§ 1024. Judge Castel abused his discretion in denying the Plaintiffs' motion.

Plaintiffs' both Memorandum of Law in support of the motion (A-1830, Dkt. 264; A-2061, Dkt. 267) are incorporated herein as an integral part of this brief.

63

## CONCLUSION

For the reason set forth above, Plaintiffs-Appellants respectfully requests that the Court vacate and reverse the District Court's orders appealed from in all respect in their entirety.

Dated: Flushing, New York
   April 2, 2024

         Respectfully submitted,

         **LAW OFFICES OF DAVID YAN, P.C.**

   By: /David Yan/ _____
       David Yan, Esq.
       136-20 38th Avenue, Suite 11E
       Flushing, NY 11354
       Tel.: (718) 888-7788

       *Attorney for Plaintiffs-Appellants*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
− − − − − − − − − − − − − − − − − − − − − − − − − X    Docket Number:  23-7469
MAN ZHANG and CHUNMAN ZHANG,
individually, and as Administrators of The Estate
of ZHIQUAN ZHANG, Deceased,

                              *Plaintiffs–Appellants,*
              v.

THE CITY OF NEW YORK, *et al.*,

                              *Defendants–Appellees.*
− − − − − − − − − − − − − − − − − − − − − − − − − X

## CERTIFICATE OF SERVICE

I certify that on April 3, 2024, I caused the foregoing Plaintiffs' Opening Brief to be (i) transmitted to the Clerk of the United States Court of Appeals for the Second Circuit using the appellate ACMS system.  I also certify that the foregoing was served on Defendants–Appellees, *via* their counsel of record, Hannah J. Sarokin, Esq. of New York City Law Department – Appeals Division, through the ACMS system as the counsel is registered user.

Dated:  April 3, 2024

                              **LAW OFFICES OF DAVID YAN, P.C.**

                              /s/ David Yan
                              David Yan, Esq.
                              136-20 38th Avenue, Suite 11E
                              Flushing, New York 11354
                              Tel.:  (718) 888-7788
                              *Attorney for Plaintiffs-Appellants*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
— — — — — — — — — — — — — — — — — — — — — — — — — — X    Docket Number:  23-7469

MAN ZHANG and CHUNMAN ZHANG,
individually, and as Administrators of The Estate
of ZHIQUAN ZHANG, Deceased,

*Plaintiffs–Appellants,*

v.

THE CITY OF NEW YORK, *et al.*,

*Defendants–Appellees.*
— — — — — — — — — — — — — — — — — — — — — — — — — X

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

1.    This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because the brief contains 13,988 words, as counted by Microsoft

Word 2001, excluding the cover, table of contents, table of authorities, signature

block, and certificates of counsel.

2    his brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in 14 point Times New Roman font, a proportionally

spaced typeface, using Microsoft Word 2001.

Dated:  April 3, 2024

**LAW OFFICES OF DAVID YAN, P.C.**
/s/ David Yan
David Yan, Esq.
136-20 38th Avenue, Suite 11E
Flushing, New York 11354
Tel.:  (718) 888-7788
*Attorney for Plaintiffs-Appellants*